## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BOGUSLAVA HUANG, BART
BAGNIEWSKI, SLAWEK PLATTA,
AUDREY PITYANSKI

        Plaintiffs,

v.

CITY OF JERSEY CITY,  MAYOR STEVEN
FULOP, in his individual and official
capacities,

        Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CASE NO.

CIVIL ACTION

## BRIEF OF BOGUSLAVA HUANG, BART BAGNIEWSKI, SLAWEK PLATTA, AND ANDRZEJ PITYANSKI IN SUPPORT OF PROPOSED TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

William Matsikoudis, Esq.
NJ Atty ID No. 022391997
wmatsikoudis@mf-legal.com
MATSIKOUDIS & FANCIULLO, LLC
128 Monticello Ave., STR 1
Jersey City, NJ  07302
Attorney for Plaintiffs

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................. 1

PRELIMINARY STATEMENT ................................................................................................. 4

STATEMENT OF FACTS.......................................................................................................... 5

LEGAL ARGUMENT ................................................................................................................. 7

I.      THE MAYOR'S UNILATERAL EVICTION OF THE KATYN MEMORIAL

VIOLATES NEW JERSEY LAW ............................................................................................. 7

II.     THE VISUAL ARTISTS' RIGHTS ACT OF 1990 GRANTS PLAINTIFF

PITYNSKI THE RIGHT TO PREVENT DISTORTION OR MODIFICATION OF THE

KATYŃ MEMORIAL BY DEFENDANT'S GROSSLY NEGLIGENT REMOVAL OF THE

MEMORIAL FROM ITS CURRENT PUBLIC PLACEMENT ................................................ 12

CONCLUSION .......................................................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

Albright v. Abington Mem'l Hosp., 548 Pa. 268 (1997) .......................................... 17

Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011)...... 8, 13, 15

Aymes v. Fried, 2014 WL 1032341 at 3 (App. Div. 2014) ....................................... 9

Cassamino v. City of Jersey City, 158 N.J. 333, 343 (1999)..................................... 9

City of Burlington v. Dennison, 42 N.J.L. 165, 166 (1880) ...................................... 10

1

English v. BFC Partners, 198 F.3d 233 (2d Cir. 1999) ............................................................ 14

English v. CFC&R East 11th Street LLC, No. 97 Civ. 7446, 1997 WL 746444, at *3

(S.D.N.Y. Dec. 3, 1997) ..................................................................................................... 14, 20, 21

Flack v. Friends of Queen Catherine Inc., 139 F. Supp. 2d 526, 540 (S.D.N.Y. 2001) 13,

20

Fraser v. Teaneck Tp., 1 N.J. 505, 507 (1949) .......................................................................... 10

Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co., 582 F.3d 721, 725

(7th Cir. 2009) ..................................................................................................................................... 8

Howard v. Mayor of Paterson, 6 N.J. 373, 377 (1951) ............................................................ 10

Hunter v. Squirrel Hill Assocs., L.P., 413 F. Supp. 2d 517, 520 (E.D. Pa. 2005) ..... 16, 17

Johnson v. Johnson, 204 N.J. 529, 557 (2010) ............................................................................ 4

Kelley v. Chicago Park Dist., 635 F.3d 290, 306 (7th Cir. 2011) .......................... 15, 19, 20

Krieger v. Jersey City, 27 N.J. 535, 542 (1958) ......................................................................... 10

Martin v. City of Indianapolis, 192 F.3d 608, 612 (7th Cir. 1999). ................................... 15

McCann v. City of Jersey City, 167 N.J. 311, 330-31 (2001) ............................................ 9, 18

McLaughlin v. City of Millville, 110 N.J.Super. 200, 209 (Law Div. 1970) .............. 10, 11

Munaf v. Geren, 553 U.S. 674, 690 (2008) ............................................................................ 9, 13

Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128 (1st Cir. 2006) ............................... 19

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26,

2017) ...................................................................................................................................................... 8

Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364-65 (2016) ................................. 17

Tobin v. The Rector, No. 17 CIV. 2622 (LGS), 2017 WL 5466705, at *5 (S.D.N.Y. Nov.

14, 2017) ............................................................................................................................................. 17

Case 2:18-cv-08933-JMV-CLW   Document 1-1   Filed 05/08/18   Page 4 of 22 PageID: 43

Wilson v. New Palace Casino, L.L.C., No. 1:11CV447-HSO-JMR, 2013 WL 870350, at *5

(S.D. Miss. Mar. 7, 2013) .................................................................................................................. 20

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ...................................... 8, 13

**Statutes**

17 U.S.C. § 106A ............................................................................................................. 12, 13, 15, 17

N.J.S.A. § 40:69A-40 ....................................................................................................................... 18

N.J.S.A. 40:69A-32 ....................................................................................................................... 9, 12

N.J.S.A. 40:69A-36 ............................................................................................................................. 9

N.J.S.A. 40:69A-40 ............................................................................................................................. 9

N.J.S.A. 40A:12-5 ............................................................................................................ 5, 10, 11, 12

**Other Authorities**

BLACK'S LAW DICTIONARY (10th ed. 2014) .................................................................................. 17

Christopher Zinsli, You know that sculpture you pass in Exchange Place? Sixteen years

after dedication, few know story - and it's not about a war, HUDSON REPORTER (May

29, 2007), http://www.hudsonreporter.com/view/full_story/2412269/article-

You-know-that-sculpture-you-pass-in-Exchange-Place--Sixteen-years-after-

dedication--few-know-story---and-it-s-not-about-a-war. ............................................... 16

H.R. 2690, 101st Cong. (June 20, 1989) .................................................................................... 20

H.R. Rep. 101-514 (1990) ................................................................................................................ 20

KEEP KATYŃ MEMORIAL IN JERSEY CITY, https://www.change.org/p/mr-rolando-r-

lavarro-jr-keep-Katyń-memorial-in-jersey-city (last visited May 8, 2018) ............. 17

Steven M. Richman, RECONSIDERING TRENTON: THE SMALL CITY IN THE POST-INDUSTRIAL AGE

112 (2011) ....................................................................................................................................... 16

3

Wikipedia, International Love, https://en.wikipedia.org/wiki/International_Love (as

of May 8, 2018 at 08:40 GMT).................................................................................... 14

**Rules**

Fed. R. Civ. P. 65(d) ................................................................................................... 12

Model Jury Charge (Civil) § 5.12 "Gross Negligence" (2009) ............................................. 16

## PRELIMINARY STATEMENT

"No one is above the law." Johnson v. Johnson, 204 N.J. 529, 557 (2010)(Albin,

J. concurring). It is a statement of law fundamental to the rule of law.

No matter how powerful, no one is above the law. As the Johnson court

intimated, "not even a Supreme Court Justice." Id. As common sense dictates, not even

the Mayor of Jersey City.

However, this is a legal lesson Jersey City Mayor Steven Fulop (the "Mayor" or

"Fulop") has yet to learn. At instant issue is a blatant power grab by the Mayor –

manifested in his effort to unilaterally repeal nearly three-decades-old legislative

enactments, and remove a both historically- and culturally-significant monument

from the Jersey City waterfront. In so doing, the Mayor is not just offending New

Jersey State law, he is violating Federal Law – and trampling on the rights of the artist

who crafted the monument.

This Court has thus become a last line of defense: It should check and balance

the Mayor, enjoin the Mayor and the City of Jersey City (the "City") from moving the

monument, and teach the Mayor the law applies to all.

4

## STATEMENT OF FACTS

The Katyn Forest Massacre Memorial (the "Katyn Memorial") is a 34-foot-tall bronze statute created by renowned sculptor Plaintiff Andrzej Pityanski ("Pityanski"). It stands on top of a granite base, and depicts a Polish soldier being impaled by a bayonet, which commemorates the massacre of thousands of Polish soldiers by the infamous Soviet dictator Joseph Stalin.

Pursuant to N.J.S.A. 40A:12-5, and by validly enacted ordinance executed by the Jersey City Council (the "Council") in September 1986, the City accepted the Katyn Memorial as gift from the Katyn Forrest Massacre Memorial Association (the "Katyn Ordinance"). In addition to accepting the gift of the Katyn Memorial, the Katyn Ordinance stated that the Katyn Memorial would be located at 75 Montgomery Street in the City of Jersey City, on the meridian strip on the west side of Washington Street, facing the Hudson River.

However, impossibility intervened. Notwithstanding the directive of the Katyn Ordinance, the Katyn Memorial was never placed at 75 Montgomery Street, because the meridian strip described in the ordinance was too small to fit the massive statue. Consequently, some two-and-a-half years after it passed the Katyn Ordinance, and spurred by the impossibility of locating the Katyn Memorial at the originally-designated site, the Council approved a resolution (the "Katyn Resolution"), which created a plaza at Exchange Place (i) specifically named the "Katyn Monument Plaza," and (ii) wherein the Katyn Memorial would be located in order to honor the aforesaid slain soldiers.

The Katyn Memorial thus took up its legislatively-granted home at Exchange Place – in the heart of Jersey City, on the City's waterfront – where it has stood for nearly three decades. Over this time, it has become a beacon for people of Polish descent: Generations of Poles – from not just Jersey City, but around the world - have visited the Katyn Memorial and its Plaza, and felt a deep spiritual connection to the Katyn Memorial as an expression of the recognition by America and Jersey City of the Polish sacrifice during World War II.

Despite all of this, the Mayor has unequivocally stated he plans to evict the Katyn Memorial. On April 30, 2018, Fulop tweeted a picture of the Katyn Memorial (the "First Tweet") and wrote:

> "FYI. This is what you see when you come out of the PATH. We'll be moving this statue from Exchange Place + will temporarily store it at DPW so it doesn't get damaged. We're doing engineering work as we prepare for repairs to the area + a community space/green park w/ seating."

The First Tweet implies that Jersey City's planned removal of the Katyn Memorial from Exchange Place would be merely temporary and only so "it doesn't get damaged." However, Poles from West Side Avenue to Warsaw were worried. They doubted whether creating a park at Exchange Place would ever be able to harm a bronze and granite statue – and certainly doubted that *moving* the massive monument would somehow keep it safe (i.e., that lifting it, loading it and transporting it would not do far more harm than good). On May 5, 2018, the fears of the Polish community – both in Jersey City and abroad – were realized: Fulop changed his tune and tweeted his real intention - to *permanently* move the Katyn Memorial. In a second

6

tweet, the Mayor stated, "The statue is being MOVED to the place it was supposed to be" (the "Second Tweet").

Upon information and belief, the Mayor has not received any authorization from the City Council to move the Katyn Memorial.

Moreover, the City's representations to Pityanski – that the Katyn Memorial would be placed in a prominent position overlooking the water – were key to Pityanski's design of the Katyn Memorial, and to the decision to gift the Katyn Memorial to the City. While Plaintiffs do not currently know precisely when Defendants intend to remove the Memorial, all indicia point to the conclusion that it is imminent and may be taken without prior authorization from the City Council, which necessitates preliminary relief enjoining Defendants from acting without such approval.

## **LEGAL ARGUMENT**

### **I. THE MAYOR'S UNILATERAL EVICTION OF THE KATYN MEMORIAL VIOLATES NEW JERSEY LAW**

The granting of a preliminary injunction or a temporary restraining order requires an establishment of imminent irreparable harm in absence of preliminary relief, a likelihood of success on the merits, a balancing of hardships in the plaintiff's favor, and indicia that the injunction will be in the public interest. The imminent irreparable harms must be resolved by a narrowly tailored request for relief. "Additionally, the district court should consider the effect of the issuance of a

7

preliminary injunction on other interested persons and the public interest." Reilly v.

City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017).

Before the Third Circuit's ruling in Reilly, there was a conflict within the Circuit as to

whether all four factors must be satisfied. Under current law, only the first two are

mandatory, with the latter requirements being resolved as balancing factors:

> [A] movant for preliminary equitable relief must meet the threshold for
> the first two "most critical" factors: it must demonstrate that it can win
> on the merits (which requires a showing significantly better than
> negligible but not necessarily more likely than not) and that it is more
> likely than not to suffer irreparable harm in the absence of preliminary
> relief4. If these gateway factors are met, a court then considers the
> remaining two factors and determines in its sound discretion if all four
> factors, taken together, balance in favor of granting the requested
> preliminary relief. In assessing these factors, Judge Easterbrook's
> observation bears repeating: "How strong a claim on the merits is
> enough depends on the balance of the harms: the more net harm an
> injunction can prevent, the weaker the plaintiff's claim on the merits
> can be while still supporting some preliminary relief." Hoosier Energy
> Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co., 582 F.3d 721, 725
> (7th Cir. 2009)

Reilly, 858 F.3d at 179.. "A plaintiff seeking a preliminary injunction must

establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest." Winter v. Natural Res. Def. Council,

Inc., 555 U.S. 7, 20 (2008). Where the balance of hardships tips sharply in the

plaintiff's favor and the plaintiff has demonstrated a likelihood of irreparable harm,

however, the plaintiff need only show that "serious questions" exist as to success on

the merits. See Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir.

2011). "A preliminary injunction is an extraordinary and drastic remedy; it is never

awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An

injunction is binding only on parties to the action, their officers, agents, servants, employees and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Simply, since the Katyn Memorial was expressly situated via valid legislative enactments, New Jersey law prohibits the Mayor from unilaterally removing and/or moving it. As set forth in New Jersey's Faulkner Act, the "Mayor-Council" form of government (under which the City was organized and has operated at all times relevant) expressly establishes an in-fact Separation of Powers in local government: A City Council exclusively exercises all "legislative functions" in a Mayor-Council municipality like Jersey City, while the municipality's mayor implements all "executive functions." N.J.S.A. 40:69A-32(b); N.J.S.A. 40:69A-36 (the legislative power of a municipality is exclusively vested in the municipal council). As New Jersey courts have long held, "[w]here one branch of government has been specifically vested with the authority to act in a prescribed manner, neither of the other branches may usurp that authority." Cassamino v. City of Jersey City, 158 N.J. 333, 343 (1999). As such, though "a mayor's authority in a Faulkner Act Mayor-Council plan of government is "substantial," and  includes  the enforcement of ordinances, ***it  does not include  the power to adopt or modify legislation."*** Aymes v. Fried, 2014 WL 1032341 at 3 (App. Div. 2014)(citing McCann v. City of Jersey City, 167 N.J. 311, 330-31 (2001) and N.J.S.A. 40:69A-40(a))(internal citations omitted)(emphasis added).

Generally, the legislative intent of a Council is manifested in the ordinances and resolutions it passes. N.J.S.A. 40:69A-36. While ordinances and resolutions are not equivalent legislative devices, "[w]here the statutes fail to indicate whether

[legislative] power should be exercised by ordinance or resolution, ***it may be done by either means***." McLaughlin v. City of Millville, 110 N.J.Super. 200, 209 (Law Div. 1970)(citing Krieger v. Jersey City, 27 N.J. 535, 542 (1958); Howard v. Mayor of Paterson, 6 N.J. 373, 377 (1951); Fraser v. Teaneck Tp., 1 N.J. 505, 507 (1949); City of Burlington v. Dennison, 42 N.J.L. 165, 166 (1880)).  As noted *supra*, the Katyn Ordinance was passed pursuant to N.J.S.A. 40A:12-5(a), which authorizes municipalities to – *only by ordinance* – "provide for the *acquisition* of any real property, capital improvements or personal property ... by purchase, gift, devise, lease, exchange, condemnation or installment purchase agreement." N.J.S.A. 40A:12-5(a)(1). However, N.J.S.A. 40A:12-5(a)(2) states, if a municipality acquires any such property or improvements "upon any lawful condition, restriction or limitation, it is hereby authorized to ***take such steps as may be necessary and proper*** to the compliance by the ... municipality with such lawful conditions, restrictions or limitations." Consistent with the concept of allowing municipalities latitude to take all "steps as may be necessary and proper," N.J.S.A. 40A:12-5(a)(2) does *not* limit municipalities to attempting to comply with "conditions, restrictions or limitations" exclusively via ordinance (i.e., the language does *not* mandate "such steps as may be necessary and proper, though, in any event, exclusively by ordinance").[1] Put

_____

[1] A deeper dive into the language of N.J.S.A. 40A:12-5 makes clear when a municipality *must* act by ordinance, and when it has latitude.  For instance, just as a municipality may only acquire property or improvements by ordinance, it must exclusively by ordinance determine that such property or improvements "can no longer be used for the purposes

10

differently, municipalities who secure property or improvements pursuant to N.J.S.A. 40A:12-5 may comply with any terms of acquisition by ordinance *or* resolution. McLaughlin, supra, 110 N.J. Super. at 209.

Given this construct, and contrary to the Mayor's Second Tweet, the Katyn Memorial is presently *exactly* where it is supposed to be: in the location the Council expressly chose for it – indeed, in the Plaza the Council specifically created for it. As prescribed by N.J.S.A. 40A:12-5, the City *acquired* the Katyn Memorial by the Katyn Ordinance. (Compl. ¶ 12.) However, central to the decision to gift the Katyn Memorial to the City was the condition that the Katyn Memorial be "placed in a prominent position overlooking the water," which was key to the artist's (Plaintiff Pityanski's) design of the monument. (Compl. ¶ 17.) Consequently, to comply with this condition, the the Katyn Ordinance also asserted that the Katyn Memorial would be "located at 75

---

for which same were acquired," and thereby tee up same for sale. Conversely, just as the statute gives a municipality broad latitude as to how it might comply with any "condition, restriction or limitation" related to acquired property or improvements, N.J.S.A. 40A:12-5 gives no specific direction as to how a municipality might (i) require the necessary "construction or repair of any capital improvement as a condition of acquisition" or (ii) how the municipality may "convert any portion" of property for improvements it has acquired for an initially unintended public use. The bottom line: A municipality must act by ordinance *only* when it is deciding whether to acquire or sell property or improvements; a municipality may manage everything else related to the property or improvements via ordinance *or* resolution.

11

Montgomery Street, on a median strip on the West Side of Washington Street, facing the Hudson River." (Compl. ¶ 13.)  However, impossibility intervened: The Katyn Memorial never made it to the site designated by the Katyn Ordinance. In short, it couldn't be placed there – it was far too big. After more than two-and-a-half years of attempting to fit a square peg into a round hole – or, more accurately in this case, fit a 35-foot-high, several ton monument onto a tiny median – the City found a more fitting spot, and the Council passed a new law. To comply with the terms of the City's acquisition of the Katyn Memorial, and pursuant to the broad latitude afforded by N.J.S.A. 40A:12-5, the Council enacted the Katyn Resolution, which created a plaza at Exchange Place (on the Jersey City Waterfront) specifically named the Katyn Monument Plaza, where the Katyn Memorial would be located. (Compl. ¶ 16.) For the past three decades, the Katyn Memorial has thus called the Katyn Monument Plaza home – and been a beacon to people of Polish descent not just in Jersey City, but around the world. (Compl. ¶ 18.)  Of course, even were the Katyn Memorial not so historically and culturally significant, as it was expressly placed in its present location by a valid legislative enactment, the separation of powers created via N.J.S.A. 40:69A-32(b) prohibit the Mayor from unilaterally removing and/or moving it.

## II.    THE VISUAL ARTISTS' RIGHTS ACT OF 1990 GRANTS PLAINTIFF PITYNSKI THE RIGHT TO PREVENT DISTORTION OR MODIFICATION OF THE KATYŃ MEMORIAL BY DEFENDANT'S GROSSLY NEGLIGENT REMOVAL OF THE MEMORIAL FROM ITS CURRENT PUBLIC PLACEMENT

The Visual Artists Rights Act of 1990 (VARA), 17 U.S.C. § 106A, grants the author of a work of visual art of recognized stature the right "to prevent any intentional distortion, mutilation, or other modification of that work which would be

12

prejudicial to his or her honor or reputation . . . and to prevent destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right." 17 U.S.C. § 106A(a)(3)(A–B).

Courts have previously examined VARA in the context of preliminary injunctions and temporary restraining orders. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Where the balance of hardships tips sharply in the plaintiff's favor and the plaintiff has demonstrated a likelihood of irreparable harm, however, the plaintiff need only show that "serious questions" exist as to success on the merits. See Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d). A prospective violation of VARA, where action is commenced to prevent a defendant from taking an action which may affect a protected work of visual art, creates a "presumption of irreparable harm." Flack v. Friends of Queen Catherine Inc., 139 F. Supp. 2d 526, 540 (S.D.N.Y. 2001) (citing English v. CFC&R East 11th Street LLC, No. 97 Civ. 7446, 1997 WL 746444, at *3 (S.D.N.Y. Dec. 3, 1997)( aff'd sub nom. English v. BFC Partners, 198 F.3d 233 (2d Cir. 1999))).

13

In this instance the balance of hardships tips very sharply in Plaintiff's favor. Imposing temporary restraints on Defendant from removing the Katyń Memorial will do no more than keep in place a memorial which has stood unmolested since 1991. There is no urgent need for Defendant to remove the Memorial Statue except to protect Mayor Fulop's aesthetic preferences when exiting the Exchange Place PATH Station. (Compl. Exhibit C.) Defendant has averred that the removal of the statue is necessary to protect it from damage during engineering work to create "a community space/green park w/ seating" [sic], however this rationale has rung hollow by the local Polish community, the Senate President of the Republic of Poland,[2] the Polish Ambassador to the United States, and the artist. See id. Given Defendant's emphasis on the negative visual appeal of the monument, which depicts the death of a bound and gagged Polish soldier in 1939 by impalement on a Soviet rifle, its prominent location, its characterization as "gruesome" by the developer who intends to remake the plaza it is located in, and complaints by two Jersey City City Council members that the decision had been made before consulting with them, it is clear that the rapid decision to remove the Katyń Memorial is at most a matter of convenience for

---

[2] Defendant characterized Polish Senator Stanislaw Karczewski, the Speaker of the Polish Senate, as "an asshole" and incorrectly referred to him as the President of the "NJ Senate" in a May 3, 2018 tweet which also bragged that Defendant was "beyond that. I'm international now like @pitbull." Pitbull is a Cuban-American rapper who released a song in 2011 called "International Love" in which he talks about girls' stereotypes all over the globe, ranging from Romania to Lebanon to Greece to Brazil to other Latin countries. See Wikipedia, International Love, https://en.wikipedia.org/wiki/International_Love (as of May 8, 2018 at 08:40 GMT). Fulop also commented via Twitter that "All I can say is this guy is a joke. The fact is that a known anti-Semite, white nationalist + holocaust denier like him has zero credibility."

14

Defendant. There are few if any hardships which would be endured if Defendant is prevented from removing the Katyń Memorial immediately. The hardships to Plaintiff if Defendant is allowed to go forward with the removal, however, are potentially immense. Between the presumption of irreparable harm under VARA, the substantial risk that the Katyń Monument could be damaged in removal or reinstallation, and the many indications that Defendant has no intention to return the Monument to its current location in the future, hardships to Plaintiff eclipse the inconvenience which Plaintiff may face.

The inquiry thus turns on whether there is a "serious question" of success upon the merits. Alliance for Wild Rockies, supra, 632 F.3d at 1131. There are two substantive questions on the merits of the VARA claim: (a) whether the work has stature; and (b) whether a modification of the work of visual art "stemming from a change in its 'public presentation, including lighting or placement,' is . . . caused by gross negligence." Kelley v. Chicago Park Dist., 635 F.3d 290, 306 (7th Cir. 2011) (citing 17 U.S.C. § 106A(c)(2). These questions will be addressed in turn.

First, the work must be established as having stature. The determination of whether a work of visual art is of recognized stature, a term not defined in the statute, has been most authoritatively articulated by the Seventh Circuit Court of Appeals in Martin v. City of Indianapolis, which ruled that recognized stature means "(1) that the visual art in question has 'stature,' i.e., is viewed as meritorious, and (2) that this stature is recognized by art experts, other members of the artistic community, or by

some cross-section of society." 192 F.3d 608, 612 (7th Cir. 1999).[3] While experts are

not available at this juncture to establish the meritorious nature of the Katyń

Memorial, public reactions to its proposed removal are indicia enough. Jersey City

faces the beginnings of an international incident: its Mayor is in direct conflict with

the political and diplomatic leadership of the Republic of Poland. A significant cross-

section of the society of Hudson County, in which Jersey City is located, the State of

New Jersey,[4] the Northeast, and the world views this art installation as

extraordinarily significant. Annual memorial services are held by the Katyń Forest

Massacre Memorial Committee every April, which Mayor Fulop attended in 2016.

These services are made possible by the large public space around the statue. In 2002,

the 9/11 Memorial Committee proposed moving the Katyń Memorial statue to allow

the placement of a 9/11 memorial in the same space. After testimony from Stanley

Paszul, a veteran of the Polish Underground Army, describing the Katyń Massacre as

an act of terrorism similar to that which happened on 9/11, the committee agreed to

leave it in its symbolic place.[5] The location of the Katyń Memorial is also at the center

---

[3] The only court in the Third Circuit to issue a ruling on this matter, in the Eastern
District of Pennsylvania, adopted this test. See Hunter v. Squirrel Hill Assocs., L.P., 413
F. Supp. 2d 517, 520 (E.D. Pa. 2005).

[4] See Steven M. Richman, RECONSIDERING TRENTON: THE SMALL CITY IN THE POST-
INDUSTRIAL AGE 112 (2011) ("A significant public structure that marks and defines a
city is the war memorial. New Jersey's cities generally have limited public sculpture.
The most dramatic one of which I am aware is the Katyn Memorial in Jersey City, in
remembrance of the 1939 massacre of 15,400 Poles by the Soviets.").

[5] See Christopher Zinsli, You know that sculpture you pass in Exchange Place? Sixteen
years after dedication, few know story - and it's not about a war, HUDSON REPORTER
(May                                    29,                                    2007),
http://www.hudsonreporter.com/view/full_story/2412269/article-You-know-
that-sculpture-you-pass-in-Exchange-Place--Sixteen-years-after-dedication--few-
know-story---and-it-s-not-about-a-war.

16

of the historic Polish population center which existed in Downtown Jersey City for many years. In less than six days, a petition to defend the Katyń Memorial from its removal by Mayor Fulop addressed to Jersey City City Council President Rolando R. Lavarro, Jr., has attracted 5,030 signatures. See KEEP KATYŃ MEMORIAL IN JERSEY CITY, https://www.change.org/p/mr-rolando-r-lavarro-jr-keep-Katyń-memorial-in-jersey-city (last visited May 8, 2018).

The Katyń Memorial clearly is a work of widely-recognized stature. The remaining question is whether the grossly negligent removal of the Memorial by Defendant could permanently modify the visual art installation in violation of Plaintiff's rights under VARA. VARA provides that impacts to a work of visual art as a "result of conservation, or of the public presentation, including lighting and placement, of the work is not a [violation] unless the modification is caused by gross negligence." 17 U.S.C. § 106A(c)(2). Gross negligence has been defined by VARA cases by reference to both state law and generally accepted legal definitions. Compare Hunter, supra, 413 F. Supp. 2d at 520 (citing Albright v. Abington Mem'l Hosp., 548 Pa. 268 (1997)) with Tobin v. The Rector, No. 17 CIV. 2622 (LGS), 2017 WL 5466705, at *5 (S.D.N.Y. Nov. 14, 2017) (citing BLACK'S LAW DICTIONARY (10th ed. 2014) ("A conscious, voluntary act or omission in reckless disregard of a legal duty and the consequences to another party....")). Whether by reference to BLACK'S LAW DICTIONARY or to New Jersey law, Defendant's actions must be in breach of a defined duty of care and create an unreasonable risk of harm. See Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364–65 (2016) (defining gross negligence as "an act or failure to act [which] creates an unreasonable risk of harm to another because of the person's

17

failure to exercise slight care or diligence. . . . [G]ross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission.") (citing Model Jury Charge (Civil) § 5.12 "Gross Negligence" (2009).

The duty owed by Defendant in his capacity as Mayor of Jersey City is defined by statute. See N.J.S.A. § 40:69A-40 (the "Faulkner Act") (describing duties of municipal mayors in New Jersey where the municipality is established on a "Mayor-Council" Plan). Those duties include the enforcement of the charter and ordinances of the municipality, supervision of the care and custody of all municipal property, making recommendations concerning the nature and location of municipal improvements, and execution of improvements determined by the governing body, i.e. the City Council. See id; see also generally McCann, supra, 167 N.J. at 324 (2001) ("The Faulkner Act is an elective statutory scheme that authorizes participating municipalities to choose between four plans of government that are set forth in the Act."). In this case, Mayor Steven Fulop has violated virtually every one of the duties of care which he owes the City of Jersey City in his official capacity. He is refusing to enforce the ordinances and resolutions of the City Council. Mayor Fulop has failed to dutifully supervise the care and custody of municipal property, specifically the Katyn Monument Plaza. (Compl. ¶ 16; Exhibit B) Mayor Fulop has failed to make recommendations to the City Council concerning the nature and location of municipal improvements. See id. Exhibit F (stating the complaints of City Council members that the Council was not previously notified of the decision to move the Katyn Memorial or in receipt of any relevant recommendation). Finally, Mayor Fulop has failed to

18

execute the improvements executed by the City Council in its lawfully passed ordinances and resolutions concerning the Katyn Memorial. Id., Exhibits A. B.

The U.S. First Circuit Court of Appeals ruled in Phillips v. Pembroke Real Estate, Inc. that so-called "site-specific" installations like the Katyn Memorial, are not covered by VARA because of what it deemed an irreconcilable tension between the public-presentation exception and the purpose of site-specific art: "By definition, site-specific art integrates its location as one of its elements. Therefore, the removal of a site-specific work from its location necessarily destroys that work of art." 459 F.3d 128 (1st Cir. 2006). The Seventh Circuit, the only other Circuit Court to rule on the issue and the ruling followed by all subsequent cases examining the issue of site-specific art installations, declined to follow Phillips for three reasons. See Kelley v. Chicago Park Dist., 635 F.3d 290, 306 (7th Cir. 2011). First, the term "site-specific art" appears nowhere in the statute, which makes the imposition of a categorical exclusion unlikely. See id., at 306-07 ("Nothing in the definition of a "work of visual art" either explicitly or by implication excludes this form of art from moral-rights protection. Nor does application of the public-presentation exception operate to eliminate every type of protection VARA grants to creators of site-specific art; the exception simply narrows the scope of the statute's protection for all qualifying works of visual art. The exception basically provides a safe harbor for ordinary changes in the public presentation of VARA-qualifying artworks; the artist has no cause of action unless through gross negligence the work is modified, distorted, or destroyed in the process of changing its public presentation."). Second, the categorical "all-or-nothing" approach of Phillips is unwarranted because site-specific art is not necessarily

19

destroyed, as that case avers, on relocation, but may be merely impermissibly modified. See id., at 307. Third, the "building exception" of section 113(d), which applies to works of art "incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work," appears "[o]n its face" to cover "a particular kind of site-specific art. Its presence in the statute suggests that site-specific art is not categorically excluded from VARA." Id. (footnote omitted).

The above-cited cases as well as other more recent cases in federal district courts have relied heavily on the legislative history of VARA, specifically House Report 101–514, to interpret VARA's provisions which lack clear definition, or, in the case of "site-specific" art, do not appear at all in the statute. See H.R. Rep. 101-514 (1990); see also generally Flack, supra, 139 F. Supp. 2d at 534; English, supra, at *5; Wilson v. New Palace Casino, L.L.C., No. 1:11CV447-HSO-JMR, 2013 WL 870350, at *5 (S.D. Miss. Mar. 7, 2013). The artist's right as so viewed is not limited to instances of gross negligence "in maintaining or protecting the work," as originally drafted, see H.R. 2690, 101st Cong. (June 20, 1989), but manifests against any instance of gross negligence which may impermissibly modify the work. See Flack, supra, 139 F. Supp. 2d at 534 (making comparison between proposed and enacted statute. Flack also emphasized that the *only* exception from liability under VARA for merely negligent destruction, distortion, or mutilation of a visual work is for attempts at conservation, not for wholesale removal of the sort contemplated here. Id.; contra English, supra, at *5 (examining legislative history that "removal of a work from a specific location

20

statute. Flack also emphasized that the *only* exception from liability under VARA for merely negligent destruction, distortion, or mutilation of a visual work is for attempts at conservation, not for wholesale removal of the sort contemplated here. Id.; contra English, supra, at *5 (examining legislative history that "removal of a work from a specific location comes within this exclusion because the location is a matter of presentation" but without applying gross negligence standard[6]).

## CONCLUSION

For the various reasons foregoing, the Court should immediately, preliminarily and permanently enjoin the Mayor from unilaterally removing and/or moving the Katyn Memorial, and/or the Mayor and City from removing and/or moving the Katyn Memorial.

Dated: May 8, 2018

William Matsikoudis

---

[6] The full text of the paragraph containing this language reads as follows:

> Proposed section 106A(c) takes into account current practices of the artistic community and supplements the exclusions set forth in the definition of a work of visual art. For example, according to proposed subsection (c)(1), a modification due to the passage of time or to the inherent nature of the materials used by the author does not violate the right of integrity, unless the modification is the result of gross negligence in maintaining or protecting the work. In addition, subsection (c)(2) excludes a modification due to conservation efforts and to the presentation of the work, including lighting and placement, unless the modification was grossly negligent. Generally, the removal of a work from a specific location comes within the exclusion because the location is a matter of presentation, unless the work cannot be removed without causing the kinds of modifications described in proposed subsection 106A(a)(3).
> See H.R. Rep. 101-514, 1990 U.S.C.C.A.N. 6915, 6927.