| | |
|---|---|
| BOGUSLAWA HUANG, BARTOSZ BAGNIEWSKI, SLAWOMIR PLATTA, ANDRZEJ PITYNSKI<br><br>            Plaintiff(s),<br>            v.<br><br>CITY OF JERSEY CITY, MAYOR STEVEN FULOP, in his individual and official capacities,<br><br>            Defendants. | Hon. John Michael Vasquez, U.S.D.J.<br><br>Civil Action No. 18-8933 (JMV-CLW) |

---

## PROPOSED INTERVENOR EXCHANGE PLACE ALLIANCE'S BRIEF IN SUPPORT OF ITS CROSS-MOTION TO INTERVENE AND DISMISS THE VERIFIED COMPLAINT FOR FAILURE TO STATE A CLAIM, AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

ROSHAN D. SHAH, ESQ.
**SCARINCI & HOLLENBECK, LLC**
**ATTORNEYS AT LAW**
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ 07701
Tel.: 201-896-7173
Fax: 201-896-7174
*Attorneys for Proposed Intervenor*
*Exchange Place Alliance*

Of Counsel and On the Brief:
Roshan D. Shah, Esq.

On the Brief:
Liana M. Nobile, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ........................................... 4

    A.    Exchange Place SID, The Exchange Place Alliance And The Vision Of A
Public Park ....................................................................................... 4

    B.    The Katyn Statue Is Illegally Placed In Front Of The Exchange Place Path
Station .............................................................................................. 5

    C.    The 2018 Katyn Ordinance And The Establishment Of A Proper, Legal
Location For The Katyn Statue ...................................................... 6

    D.    Plaintiffs' Rush To The Court To Obtain An Injunction ............................. 7

STANDARD OF REVIEW ............................................................... 8

ARGUMENT ............................................................................... 9

POINT I

    THE ALLIANCE SHOULD BE PERMITTED TO INTERVENE IN THIS
MATTER .................................................................................... 9

    A.    The Alliance Should Be Permitted To Intervene As A Matter Of Right ...... 9

        1.   *This Matter Is In Its Infancy And, Thus, The Alliance's Application
To Intervene Is Timely* ............................................................ 9

        2.   *The Alliance Is Seeking To Build A Public Park In The Same Location
Where The Katyn Statue Resides And, Thus, It Has A Substantial
Interest In The Outcome Of This Matter* ............................... 10

        3.   *An Adverse Ruling Against Jersey City Will Thwart The Alliance's
Plans For A Public Park* ........................................................ 11

        4. *The Alliance's Interests Are Not Adequately Represented* ................... 11

    B.    If This Court Determines That The Exchange Place Alliance Is Not
Permitted To Intervene As A Matter Of Right, It Should Permit The
Alliance To Permissively Intervene ............................................ 11

ii

POINT II

      PLAINTIFFS' STATE LAW CLAIM THAT RELOCATION OF THE KATYN
      STATUE IS UNAUTHORIZED IS NOW MOOT .....................................................12

POINT III

      THE COURT SHOULD DISMISS THE VARA CLAIM BECAUSE THAT
      FEDERAL STATUTE DOES NOT GRANT PLAINTIFFS THE RIGHT TO
      MAINTAIN THE STATUE IN ITS PRESENT, ILLEGAL LOCATION...................13

      A.     Jersey City And The Alliance Seek To Merely Relocate The Katyn Statue,
            Not Modify, Distort Or Destroy It................................................................14

      B.     Plaintiffs' Claim That The Statue Is "Site-Specific" Misreads The Law ......15

POINT IV

      EVEN IF PLAINTIFFS' CLAIMS SOMEHOW SURVIVE, THEY DO NOT
      MEET THE STANDARD FOR A PRELIMINARY INJUNCTION........................ 16

      A.     Plaintiffs Are Not Likely To Succeed On The Merits With Respect to
            The Granting Of A Preliminary Injunction ................................................. 16

      B.     The Balance Of Equities Does Not Tip Sharply In Plaintiffs' Favor ..........17

      C.     An Injunction Is Not In The Public Interest................................................ 18

CONCLUSION............................................................................................................. 19

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*American Malleables Co. v. Bloomfield*,
    83 N.J.L. 728 (E. & A. 1912) ............................................................................12

*Antonelli Construction, Inc. v. Milstead*,
    34 N.J. Super. 449 (Law Div. 1955)..................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 8

*Benjamin v. Dep't of Pub. Welfare of Pa.*,
    701 F.3d 938 (3d Cir. 2012) ........................................................................... 10

*Bistrian v. Levi*,
    696 F.3d 352 (3d Cir. 2012)............................................................................. 8

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.*
    *Loan Litig.*, 418 F.3d 277 (3d Cir. 2005).......................................................... 9

*Cohen v. G&M Realty L.P.*,
    2018 U.S. Dist. LEXIS 22662 (E.D.N.Y. Feb. 12, 2018)................................17

*Inganamort v. Fort Lee*,
    72 N.J. 412 (1977) ......................................................................................2, 12

*Kelley v. Chi. Park Dist.*,
    635 F.3d 290 (7th Cir. 2011)..........................................................................14

*Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995)............................................................................... 9

*Munaf v. Geren*,
    553 U.S. 674 (2008) ....................................................................................... 16

*Phillips v. Pembroke Real Estate, Inc.*,
    459 F.3d 128 (1st Cir. 2006) ........................................................3, 14, 15, 16

*Pollara v. Seymour*,
    344 F.3d 265 (2d Cir. 2003) ...........................................................................13

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) ............................................................................ 9

iv

*Winters v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)....................................................................................... 16

## Statutes

17 U.S.C. §101 ........................................................................................13

17 U.S.C. § 106A............................................................................ *passim*

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 12 ....................................................................................... 8

Fed. R. Civ. P. 24 .................................................................................9, 11

4819-5594-1230, v. 1

## PRELIMINARY STATEMENT

This case is about relocating a statue--the Katyn Forest Massacre Memorial ("Katyn Statue")--a mere 430 feet so that a public park can be developed for the benefit of all Jersey City residents. The statue memorializes the tragic massacre of Polish soldiers by the former Soviet Union in or around 1939-40. It has sat at the eastern terminus of the Exchange Place Path Station in Jersey City for almost thirty years, ***even though no legislative act permits it to be there***.

Plaintiffs--Andrzej Pitynski, the creator of the statue, along with three other Jersey City residents, Bartosz Bagniewski, Slawomir Platta and Boguslawa Huang--have now filed suit seeking an injunction preventing the statue's relocation. What appears to have grated plaintiffs is that Jersey City Mayor Steven Fulop made statements on Twitter[1] which they took to mean that the statue's relocation was imminent. Plaintiffs hurriedly fled to this Court and sought a preliminary injunction, which is now returnable on August 7, 2018. Plaintiff raise two claims, the first is that Mayor Fulop is violating state law by unilaterally moving the statue in contravention of Resolution C-427, a resolution passed in 1989 that fixed the Katyn Statue's placement in the southern part of the plaza (which is not where it was placed anyway). Second, the Verified Complaint claims that relocation of the statue violates the Visual Artists Right Act of 1990 (VARA), 17 U.S.C. § 106A. Plaintiffs claim that, under VARA, the statue must remain in its current location, presumably until the end of time.

The Exchange Place Alliance (the "Alliance"), a non-profit organization with authority to make improvements to the plaza where the statue currently resides, now

---

[1] Twitter is a social media application that permits the user to post comments for the benefit of his followers and the service's other users.

1

moves to intervene and dismiss plaintiffs' Verified Complaint for failure to state a claim. The Alliance should be permitted to intervene because it plans to develop a public park in the plaza and an injunction prohibiting the statue's removal will torpedo those plans.

The plaintiffs' claims are without merit. First, their state law claim is moot. In their Verified Complaint--filed on May 8, 2018--plaintiffs argued that the 1989 Resolution controls the statue's placement and its placement cannot be modified without legislative action. Putting aside the fact that an ordinance passed in 1986, McC-299 (the "1986 Katyn Ordinance"), fixed the statue's location at Montgomery Street and that an ordinance cannot be modified by a subsequent resolution, *Inganamort v. Fort Lee*, 72 N.J. 412, 421 (1977), the more fatal problem for plaintiffs is that, on June 13, 2018, the Jersey City Council voted to relocate the memorial to the eastern terminus of York Street. *See* JERSEY CITY MUNICIPAL CODE, § 18-057 (2018) ("the 2018 Katyn Ordinance"), attached as Exhibit A to Declaration of Roshan D. Shah, Esq. ("Shah Decl."). Thus, plaintiffs called for a legislative act and received it. Yet, for some reason, plaintiffs have failed to drop the First Count of their Verified Complaint. Their stubbornness shouldn't preclude the Court from dismissing it for them.

Plaintiffs' VARA claim is also without merit. At the outset, none of the plaintiffs except Pitynski can assert a claim under VARA, which only grants rights to the "author of a work of visual art." 17 U.S.C. § 106A. Pitynski is the author, not Bagniewski, Platta or Huang. But more importantly, Pitynski's claim also fails.

VARA protects a work of visual art--which the Katyn Statue undoubtedly is--from being intentionally distorted, mutilated, modified, or otherwise destroyed. 17 U.S.C. § 106A(a)(3)(B). But the statue also grants the beneficiary or displayer of the art--in this case, Jersey City--the right to control the statue's public placement. 17 U.S.C. §

106A(c)(2). Unless Jersey City is "grossly negligent" in its relocation of the statue and thereby damages it, the public presentation exception defeats Pitynski's claim. *Id.*

Pitynski's claim that the statue is site-specific is based on a misunderstanding of what site-specific art is. "By definition, site-specific art integrates its location as one of its elements. Therefore, the removal of a site-specific work from its location necessarily destroys that work of art." *Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128, 130 (1st Cir. 2006). Examples include the Mount Rushmore National Memorial and the ceiling of the Sistine Chapel.

In contrast, Pitynski seems to believe that artwork becomes site-specific based on *how the public uses the site around it*. For example, Pitynski alleges the Katyn Statue is site-specific because "[a]nnual memorial services are held in April by the Katyn Forest Massacre Memorial Committee . . . [t]hese services are made possible by the large public space around the statue." *Verified Comp.*, ¶ 33. VARA does not concern itself with public access to the statue; it only concerns itself with preserving the statue. *Phillips*, 459 F.3d at 139 (the "point of VARA is not to preserve a work of visual art *where* it is, but rather to preserve [] work *as* it is" (internal quotations omitted)(emphasis in original)). Under Pitynski's theory, statues could never be relocated, so long as some interest group found their current location to be best suited to their taste. That's an absurd theory without any basis in law and is seemingly unnoticed by any local legislatures or activists in the Deep South which continue to relocate Confederate monuments in light of changing social attitudes. VARA does not recognize any such theory. Thus, Pitynski's claim must fail as a matter of law.

For these reasons, the Court should grant the Alliance's motion to intervene and its motion to dismiss the Verified Complaint for failure to state a claim.

## PROCEDURAL AND FACTUAL BACKGROUND

A.     Exchange Place SID, The Exchange Place Alliance And The Vision Of A Public Park.

In 2016, and in recognition that the area surrounding Exchange Place "has special needs and requires special services," Jersey City cleaved out certain properties and created the Exchange Place Special Improvement District (the "District"). JERSEY CITY MUNICIPAL CODE, § 69-70 (2016), attached as Exhibit B to Shah Decl.  The entire Harborside complex—including the plaza outside the Exchange Place PATH Station which includes the Katyn Memorial Statue—is included within the District.  *Declaration of Michael DeMarco Decl. ("Demarco Decl.")*, ¶¶ 8, 12.

The District's enabling ordinance called for the creation of the District Management Corporation, *i.e.*, the Alliance.  JERSEY CITY MUNICIPAL CODE, § 69-70 (2016), Exhibit B to Shah Decl. The Alliance is a non-profit, self-financed entity. *DeMarco Decl.*, ¶ 1.  The Alliance has a board of directors and  holds regular public meetings, usually one Tuesday per month.  *Id.* at ¶¶ 3-4.  The meetings are generally held at Harborside II, 200 Hudson Street, Suite 801, in Jersey City.  *Id.* at ¶ 5.  The meetings for the entire 2018 calendar year are posted on the Alliance's publicly-accessible website.  *Id.* at ¶ 6.  The Alliance records minutes from the meetings and makes those minutes available to the public through its website. *Id.* at ¶ 7.

The Alliance is also vested with several enumerated powers pursuant to its enabling ordinance. JERSEY CITY MUNICIPAL CODE, § 69-70 (2016), Exhibit B to Shah Decl. One of those enumerated powers includes "[u]ndertak[ing] improvements designated to increase the safety or attractiveness of the district to businesses which may wish to locate there or to visitors to the District[.]" *Id.* These improvements may include creating

4

"recreational and rest areas and facilities, pursuant to pertinent regulations of the City of Jersey City." *Id*. One such proposed improvement is the creation of a public park within the District, specifically in the plaza outside the Exchange Place PATH Station which the Katyn Statue currently occupies. *DeMarco Decl*. ¶ 10. Building this park will necessitate the relocation of the Katyn Statue. *Id*. at ¶ 13.

There is no immediate plan to move the Katyn Statue. The Alliance has not yet solicited or received bids for the construction of the public park. *DeMarco Decl*. ¶¶ 14-15. In other words, while the Alliance's vision of a public park remains unwavering, that vision will still take time to manifest. Nonetheless, the Alliance is very much concerned about any litigation or legislation that may impact its future plans. *See Id*. at ¶¶ 16, 19. In the event the Alliance is not permitted leave to intervene, it will be forced to seek a declaratory judgment upholding the validity of the 2018 Katyn Ordinance and the Alliance's right to relocate the statue. *Id*. at ¶ 20.

    B.    The Katyn Statue Is Illegally Placed In Front Of The Exchange Place Path Station.

As all parties acknowledge, the 1986 Katyn Ordinance specifically stated that the "Katyn Forest Massacre Memorial will face the Hudson River and be located on the west side of Washington Street at the intersection of Montgomery Street on the median strip directly in front of 75 Montgomery Street." *See* 1986 Katyn Ordinance, attached as Exhibit C to Shah Decl.

Two years later, Jersey City adopted a resolution--but not an ordinance-- establishing the Katyn Statue's location at the "southerly side of Exchange Place opposite at Path Station." *See* 1986 Katyn Resolution, Exhibit D to Shah Decl. However, the statue was not placed at this location either and, instead, was placed at the eastern terminus of

5

the plaza. *See* 2018 Katyn Ordinance, Exhibit A to Shah Decl. This is where the statue has resided since.

Thus, the statue has remained in a location unauthorized by any municipal act for almost 30 years.

C. The 2018 Katyn Ordinance And The Establishment Of A Proper, Legal Location For The Katyn Statue.

On June 13, 2018, the Jersey City Council adopted the 2018 Katyn Ordinance. *See* 2018 Katyn Ordinance, Exhibit A to Shah Decl. The ordinance rescinded the 1986 Katyn Ordinance and recognized that the Katyn statue stood in a location inconsistent with both the 1986 Ordinance and the 1989 Resolution. *Id.*

The 2018 Katyn Ordinance established a new home for the Katyn Statue at the eastern terminus of York Street, recognizing it is "the best location for those visiting the Memorial to experience the Memorial in a more meditative space and develop a more meaningful appreciation of this tragic event." *Id.*

The 2018 Katyn Ordinance also recognizes the public's interest in moving the statue, noting the "need to improve the existing public right of way at Exchange Place, including improvements to the public walkway and the plaza at the foot of Exchange Place." *Id.*

In its current location, the Katyn Statue is situated directly in the walking path of commuters utilizing the Exchange Place station. *Google Maps Printout*, attached as Exhibit E to Shah Decl. However, the statue's new home will be on York Street by the waterfront, about 430 feet from its original location (the "York Street Site"). *Id.*

The 2018 Katyn Ordinance explicitly states that Jersey City intends to handle the relocation of the Katyn Statue in a way that "ensure[s] that the Memorial will be preserved

and placed in a location more befitting its significance." *See* 2018 Katyn Ordinance, Exhibit A to Shah Decl.

        D.    <u>Plaintiffs' Rush To The Court To Obtain An Injunction.</u>

In a rage over tweets by Mayor Fulop, plaintiffs rushed to Court on May 8, 2018 and sought a preliminary injunction to prevent removal of the statue--even though no removal was or is imminent.  Their Verified Complaint asserts two counts: 1) a claim that Mayor Fulop cannot unilaterally remove the statue without legislative authorization; 2) a claim that relocating the statue will violate VARA. *Verified Comp.*, Counts I and II.

Despite intervening events--including Jersey City's adoption of the 2018 Katyn Ordinance--plaintiffs have refused to withdraw their Verified Complaint or even dismiss Count I.

The Alliance now cross-moves to intervene and dismiss the Verified Complaint for failure to state a claim.

## **STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under the *Twombly/Iqbal* duology, courts must conduct a three-step process in analyzing a 12(b)(6) motion. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

First, the district court must "outline the elements a plaintiff must plead to state a claim for relief." *Id.* Next, the district court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, the district court must examine the pleading to identify the "well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "This last step is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citations and internal quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

4819-5594-1230, v. 1

## **ARGUMENT**

<u>POINT I</u>

<u>THE ALLIANCE SHOULD BE
PERMITTED TO INTERVENE IN THIS
MATTER</u>

Rule 24 permits non-parties two avenues by which to intervene: as a matter of right

or permissively. FED. R. CIV. P. 24(a) and (b). The Alliance meets the criteria under both

tests.

A.    <u>The Alliance Should Be Permitted To Intervene As A Matter Of Right.</u>

Rule 24 (a)(2) governs intervention as of right. It permits a non-party to intervene

if: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest

in the litigation; (3) the interest may be affected or impaired, as a practical matter by the

disposition of the action; and (4) the interest is not adequately represented by an existing

party in the litigation." *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*,

72 F.3d 361, 365-66 (3d Cir. 1995). Here, the Exchange Place Alliance meets all four

criteria.

       *1.*     *This Matter Is In Its Infancy And, Thus, The Alliance's
             Application To Intervene Is Timely.*

In determining whether a request to intervene is timely, courts must consider the

totality of circumstances.  *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d

Cir. 1994); *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.

Loan Litig.*, 418 F.3d 277, 314 (3d Cir. 2005).  Factors to consider are: (1) the stage of the

proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the

delay. *Mountain Top Condo. Ass'n,* 72 F.3d at 369.

9

This case is in its infancy, as plaintiffs' Verified Complaint was only filed on May 8, 2018.  No party has responded to the Verified Complaint. There has been no delay and therefore no prejudice to the parties by the Alliance seeking to intervene at this early stage.

2.     *The Alliance Is Seeking To Build A Public Park In The Same Location Where The Katyn Statue Resides And, Thus, It Has A Substantial Interest In The Outcome Of This Matter.*

To meet the second prong, "the claimed interest in the litigation must be one that 'is specific [to those seeking to intervene], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012)(alteration in original). "[P]ragmatism is a substantial factor that must be considered: 'The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, [under the former rule], that intervention must be limited to those who would be legally bound as a matter of *res judicata*.'" *Id.* (citing 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1006 (2d ed. 1987))(both alterations in original).

Here, the Alliance easily vaults the second prong.  One of the Alliance's enumerated powers is to make improvements to the District, including the plaza where the Katyn Statue is located. Jersey City Municipal Code, § 69-70 (2016), Exhibit B to Shah Decl. The Alliance seeks to build a public park in the plaza and seeks to relocate the Katyn Statue to accomplish this goal. *Demarco Decl.*, ¶¶ 10-13. If this Court issues an injunction prohibiting the statue's removal, the Alliance's plans will be stymied.

3.    *An Adverse Ruling Against Jersey City Will Thwart*
*The Alliance's Plans For A Public Park.*

As noted above, the Alliance seeks to improve the plaza where the statue currently

resides. These improvements cannot proceed if plaintiffs succeed in blocking the

relocation of the Katyn Statue.  Thus, the Alliance will be adversely impacted if plaintiffs

prevail in this litigation. Thus, the third prong has been satisfied.

4.    *The Alliance's Interests Are Not Adequately Represented*

The Alliance's interests--to renovate and build a park at Exchange Place Plaza--are

not adequately represented by any of the parties to this litigation.  Although Jersey City

and the Alliance have similar interests in the outcome of this litigation, Jersey City could

try to settle or resolve the underlying lawsuit with plaintiffs, possibly to the detriment of

the Alliance. Furthermore, it is unknown whether Jersey City will appeal an adverse

decision--the Alliance almost assuredly will. Therefore, the Alliance's interest are not

adequately represented by any of the named parties.

Because the Alliance meets all four elements for intervention as a matter of right,

it is respectfully requested that the Court grant its motion to intervene.

B.    If This Court Determines That The Exchange Place Alliance Is Not
Permitted To Intervene As A Matter Of Right, It Should Permit The
Alliance To Permissively Intervene.

Fed. R. Civ. P. 24(b)(1) governs permissive intervention, stating "on timely motion,

the Court may permit anyone to intervene who: (A) is given a conditional right to

intervene by a federal statute; or (B) has a claim or defense that shares with the main

action a common question of law or fact." As discussed in Point I(A), the Alliances's

intervention is timely as this matter is in its infancy.  The Alliance also satisfies part (B).

11

If the Alliance is not permitted to intervene in this action, then its remedy is to file a separate suit seeking a declaratory judgment that the statue is improperly placed in the plaza and must be removed in accordance with the 2018 Katyn Ordinance. *DeMarco Decl.*, ¶ 20. That action will assert the same defenses (albeit in an offensive posture) to plaintiffs' claim that the statue must remain in its current location. Thus, the Alliance also satisfies the test for permissive intervention.

Accordingly, the Alliance should be permitted to intervene in this matter.

<u>POINT II</u>

PLAINTIFFS'  STATE  LAW  CLAIM
ALLEGING THAT RELOCATION OF THE
KATYN STATUE IS UNAUTHORIZED IS
<u>NOW MOOT.</u>

Count I of the Verified Complaint alleges Jersey City has no authority to move the statue without some form of legislative--as opposed to executive--action. *Verified Comp.*, ¶ 23. Stated simply, Mayor Fulop cannot relocate the statue via tweet. But this is all moot now. Since this lawsuit was filed, Jersey City passed the 2018 Katyn Ordinance calling for the statue's relocation to the York Street Site. The 2018 Katyn Ordinance was validly promulgated and has not been declared null and void by any court. Thus, there no longer exists a basis for plaintiffs to maintain their claim that relocation of the statue violates the law. The opposite is true: municipal law requires relocation.[2]

---

[2] Even without the 2018 Katyn Ordinance, plaintiffs' claim was always specious. The 1986 Katyn Ordinance required the statue to be placed near Montgomery Street, not the plaza. The 1989 Resolution's attempt to modify that was null and void. That is because "an ordinance may not be amended or modified by a resolution." *Inganamort*, 72 N.J. at 421; *American Malleables Co. v. Bloomfield*, 83 N.J.L. 728, 734-735 (E. & A. 1912); *Antonelli Construction, Inc. v. Milstead*, 34 N.J. Super. 449, 456 (Law Div. 1955).

<u>POINT III</u>

THE COURT SHOULD DISMISS THE
VARA CLAIM BECAUSE THAT FEDERAL
STATUTE DOES NOT GRANT
PLAINTIFFS THE RIGHT TO MAINTAIN
THE STATUE IN ITS PRESENT, ILLEGAL
<u>LOCATION.</u>

"VARA was enacted in 1990 as an amendment to the Copyright Act, to provide for the protection of the so-called 'moral rights' of certain artists." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). Subject to certain exceptions, Section 106A(a)(3) of VARA grants "the author of a work of visual art"[3] two important rights. The first is the right "to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." 17 U.S.C. § 106A(a)(3)(A). "[A]ny intentional distortion, mutilation, or modification of that work is a violation" of this right. *Id.*

The second right conferred by Section 106(a)(3) is the right to "prevent any destruction of a work of recognized stature[.]"17 U.S.C. § 106A(a)(3)(B). This right is violated by any "intentional or grossly negligent destruction" of the work. *Id.*

Based on VARA's plain text, Bagniewski, Platta and Huang have no viable VARA claim because they are not "the author of a work of visual art." 17 U.S.C. § 106A(a)(3). That leaves only Pitynski's claim.

Despite its grant of certain, limited rights to authors of visual art, VARA does not subordinate the beneficiary to the author's wishes concerning the artwork's placement. Rather, it confers upon the beneficiary the right to control public placement, so long as he does not modify the artwork through gross negligence:

---

[3] The Katyn Statue falls within the statutory definition of "work of visual art."  17 U.S.C. §101.

\*\*\*

(2)    The modification of a work of visual art which is the result of
conservation, or of the public presentation, including lighting
and placement, of the work is not a destruction, distortion,
mutilation, or other modification described in subsection
(a)(3) unless the modification is caused by gross negligence.

17 U.S.C. § 106A(c)(2).

This exception, known as the public presentation exception, creates a "safe harbor for ordinary changes in the public presentation of VARA-qualifying artworks" and affirms that "the artist has no cause of action unless through gross negligence the work is modified, distorted, or destroyed in the process of changing its public presentation." *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 306-07 (7th Cir. 2011).

The public presentation exception makes clear that the "point of VARA is not to preserve a work of visual art *where* it is, but rather to preserve [] work *as* it is." *Phillips*, 459 F.3d at 139 (internal quotations omitted) (emphasis in original). "[A]rtwork that can be moved in some fashion, such as paintings or sculptures -- that is, art that is not permanently affixed or 'integrated' in such a way that the mere act of moving it would destroy it," falls squarely within the public presentation exception. *Id.* at 141. The public presentation exception defeats Pitynski's claim here.

A.    Jersey City And The Alliance Seek To Merely Relocate The Katyn Statue,
Not Modify, Distort Or Destroy It.

Here, Jersey City and the Alliance seek to do nothing more than relocate the Katyn Statue just 430 feet from its current location. There is no desire on Jersey City's part to harm the statue. In fact, the 2018 Katyn Ordinance expresses that "the City wishes to ensure that the Memorial will be preserved and placed in a location more befitting its significance." *See* 2018 Katyn Ordinance, Exhibit A to Shah Decl. Indeed, the 2018 Katyn

Ordinance even contains assurances that Jersey City collaborated with the Polish American community to determine that the York Street Site would provide a "more meditative space and [allow those visiting the memorial the opportunity to] develop a more meaningful appreciation of this tragic event." *Id*. The act of merely relocating the statue is protected by the public presentation exception and defeats Pitynski's VARA claim.

      B.    <u>Plaintiffs' Claim That The Statue Is "Site-Specific" Misreads The Law.</u>

Plaintiffs contend that moving the Katyn Statue constitutes a modification, distortion or destruction because it is a site-specific structure. *Verified Comp.*, ¶ 33. Plaintiffs allege the statue is site-specific because:

- Annual memorial services are held in April by the Katyn Forest Massacre Memorial Committee every year, which Mayor Fulop attended in April 2016. These services are made possible by the large public space around the statue.

- In 2002, the 9/11 Memorial Committee proposed moving the Katyn Memorial statue to allow the placement of a 9/11 memorial in the same space. After testimony from Stanley Paszul, a veteran of the Polish Underground Army, describing the Katyn Massacre as an act of terrorism similar to that which happened on 9/11, the committee agreed to leave it in its symbolic place.

- The location of the Katyn Memorial is also at the center of the historic Polish population center which existed in Downtown Jersey City. *Id*.

Plaintiffs are misconstruing what site-specific art means. At the outset, "the term 'site-specific art' appears nowhere in the statute." *Kelley*, 635 F.3d at 306. "Nothing in the definition of a 'work of visual art' either explicitly or by implication excludes this form of art from moral-rights protection." *Id*. Rather, the term "site-specific art" is merely another way of describing art that "integrates its location as one of its elements. Therefore, the

15

removal of a site-specific work from its location necessarily destroys that work of art." *Phillips*, 459 F.3d at 140.

Plaintiffs do not allege that relocation of the statue will *physically* modify, distort or destroy the statue. Rather, their chief complaint is that the statue will not be appreciated the same way in another location. But VARA does not grant authors the right to a prominent display. In fact, VARA does not grant them the right to dictate placement at all. *See* 17 U.S.C. § 106A(c)(2). Under their theory, once a sculpture is placed anywhere and finds appreciation from the public, it cannot be removed. There is nothing in VARA's plain text to support that theory.

Again, the "point of VARA is not to preserve a work of visual art *where* it is, but rather to preserve [] work *as* it is." *Phillips*, 459 F.3d at 139 (internal quotations omitted) (emphasis in original). Thus, the VARA claim should be dismissed.

POINT IV

EVEN IF PLAINTIFFS' CLAIMS SOMEHOW SURVIVE, THEY DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winters v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Further, and as plaintiffs also note, "a preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Plaintiffs cannot meet the first, third or fourth elements.

A.   Plaintiffs Are Not Likely To Succeed On The Merits With Respect to The Granting Of A Preliminary Injunction.

As noted above, plaintiffs' state law claims are moot in light of the 2018 Katyn Ordinance. The VARA claim, if it somehow survives, is unlikely to fare much better in light of the fact that VARA does not grant authors the right to display their works in the location of their choice. Indeed, through the public presentation exception, VARA makes clear that the right to shift the statue's location resides with the work's beneficiary, so long as he does not modify, distort or destroy it through gross negligence. 17 U.S.C. § 106A(c)(2). There is no evidence in the current record to show that relocating the statue--the means by which have not even yet been determined--will harm the statue. Thus, plaintiffs fail on the first prong.

B.   The Balance Of Equities Does Not Tip Sharply In Plaintiffs' Favor.

What plaintiffs seek, at its core, is to maintain a statue in a location that is not authorized by any municipal legislative or executive act.  They cannot seek refuge under VARA because there is no evidence in the record that the statue has been damaged or will be damaged in the future--indeed, this Court does not have before it any evidence as to the means and methods Jersey City or the Alliance may use to relocate the statue, thereby rendering speculative plaintiffs' entire theory of future damage.

Moreover, if the statue is damaged by gross negligence during the relocation, plaintiffs have available money damages to compensate their loss, much like any other author of a copyrighted work. *Cohen v. G&M Realty L.P.*, 2018 U.S. Dist. LEXIS 22662, at *8 (E.D.N.Y. Feb. 12, 2018)("Damages that may be awarded for the violation of the artist's rights of attribution and integrity under § 106A(a)(3) are the same that apply for copyright infringement, namely actual (including profits) and statutory.").

17

In contrast, an injunction will prohibit Jersey City and the Alliance from undertaking development of a public park and providing a benefit to the residents and visitors of the city. *DeMarco Decl.*, ¶¶ 17-19.  The Court should not countenance such a result based on claims that are either moot or have no basis in law.

      C.     <u>An Injunction Is Not In The Public Interest.</u>

Finally, an injunction preventing the relocation of the Katyn Statue one block south from its current location to the York Street Site is not in the public's best interest.  The 2018 Katyn Ordinance expressly lays out that the statue must be relocated "due to the need to improve the existing public right of way at Exchange Place, including improvements to the public walkway and the plaza at the foot of Exchange Place." *See* 2018 Katyn Ordinance, Exhibit A to Shah Decl. Relocating the statue will also result in the creation of a public park for the public to enjoy. *DeMarco Decl.*, ¶ 10.  The renovation of a busy commuter walkway and the creation of a public park is in the public's interest – actions that would be prevented if plaintiffs have their way.

Plaintiffs have failed to show that they would succeed on the merits, that the balance of equities tips in their favor, or that enjoining relocation of the Katyn Statue is in the public's interest.  Thus, even if the Court is somehow not inclined to dismiss plaintiffs' Verified Complaint, it should still deny their application for a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Exchange Place Alliance's cross-motion and dismiss the Verified Complaint for failure to state a claim. At a bare minimum, the Court should deny plaintiffs' application for a preliminary injunction.

Dated: July 23, 2018

**SCARINCI & HOLLENBECK, LLC**
**ATTORNEYS AT LAW**
*Attorneys for Proposed Intervenor*
*Exchange Place Alliance*


By: <u>*/s/ Roshan D. Shah*</u>
Roshan D. Shah, Esq.

4819-5594-1230, v. 1