**THE ABRAHAM LAW FIRM, LLC**
Markis M. Abraham, Esq.
225 St. Pauls Avenue, #15R
Jersey City, New Jersey 07306
P: (973) 680-7151
F: (888) 680-7179
E: mabraham@abelawfirm.com
***Attorney ID 022752008***
Attorney for Proposed Intervenor, *Maria Scariati*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOGUSLAWA HUANG, BARTOSZ BAGNIEWSKI, SLAWOMIR PLATTA, ANDRZEJ PITYNSKI<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF JERSEY CITY, STEVEN M. FULOP, in his individual and official capacities,<br><br>                    Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action No. 2:18-cv-8933 (JMV-CLW)<br><br>**DECLARATION OF MARIA SCARIATI** |

I, **MARIA SCARIATI**, of full age hereby certify and say:

1.      I am a proposed intervenor, named individually in the above-referenced matter.

2.      I am familiar with the facts stated herein and I make this declaration in support of my motion to intervene and in opposition to proposed intervenor Exchange Place Alliance's motion to intervene and to dismiss the verified complaint.

3.      I am a 20-year vested Jersey City property owner who is civically active.

4.      I make my home & currently reside in the Original Doctor's house on "Doctor's Row" at Historic Legacy Address 101 Bentley Ave., Jersey City, New Jersey 07304 (listed on Jersey City Property Tax records and portal as 103 Bentley Avenue).

5.      I served as one of five Steering Committee Persons to establish a SID [CBID] and

Assessment Logarithm, in active UEZ times, within Irvington, New Jersey and also served (volunteering my time and skill sets) as Treasurer on the Board of Directors of the Camptown Business Improvement District in Essex County ("CBID") and I am fully familiar with New Jersey State regulations and policies that govern SIDs throughout the State of New Jersey.

6.      I have personal experience in successfully fending off attempts by government officials (Municipal and County), to declare my New Jersey commercial property holdings as blighted and in need of  redevelopment (by others, aka Developers, for no other purpose than to merely increase the Municipality's Tax Rateables and Revenues), by way of exercising their government powers of Eminent Domain over us.

7.      I attend as many Jersey City Council meetings as my client commitments, health and travel  itinerary[s] permit, and make a concerted effort to keep pace with the machinations of our local elected officials, currently known as the Fulop Administration, who are required by Law to act with fiduciary responsibility/care and entrusted by the public to operate our City in service to the Constituents effectively, efficiently and further administer/appropriate our hard earned tax dollars and collective city assets with the highest level of integrity in a most transparent manner.

8.      After residing for nine (9) years in my own mixed-use building in the Historic Van Vorst Park District in Downtown Jersey City, where I was repeatedly restricted by Historic Preservation Officer  Dan Wreiden and being blocked from the highest and best use of my Downtown Jersey City Montgomery St. property to adequately function my personal and business needs that included off-street parking for business vehicles, I purchased my Bentley Avenue home with off-street parking (only after being assured by the seller's agent that Jersey City had no imminent plans to bring Historic District Overlays to the area), and invested a small

2

fortune to modernize, restore and tailor the home to accommodate my personal lifestyle choices and my mother's limited mobility needs and settled in.

9.     In the winter of 2015, I received a STOP-the District Postcard via  my snail-mail-slot that caused me to turn my undivided attention and focus to study this Administration's antics, and become actively involved in Public Hearing/Civic matters to protect my property interests.

10.     After experiencing the 7-hour Second Reading Public Hearing at a Jersey City Council meeting where the District Property Owners / Stakeholders were merely tolerated and witnessing my 1st Rubber Stamp Council Vote to adopt an Empty Historic District Overlay Ordinance that Mayor Fulop wanted, so that he might freely manipulate Local Land Use and artificially inflate our property values with impunity to serve his personal and political agenda, I became outraged.

11.     I started to follow the City Council's activities closely, attending more meetings of the City Council, Planning and Zoning boards to familiarize myself with all of the protocol and players in this game and requested many more details through the avenues provided me by New Jersey law, such as OPRA requests, Public Records, Public services by the City Clerk, etc..

12.     I hired out videographer services to fully document Fulop's appearances and verbal commitments to each audience via his Ward Specific Roadshow Citywide Public Safety meeting happenings and select City Council meetings, before I discovered that City Council meetings were JCTV videoed to serve as supplemental Minutes in the City Clerk's official capacity.

13.     In 2016 I witnessed the 2nd reading Public Hearing regarding the Formation of a new Special Improvement District ("SID") named the Exchange Place Alliance with a 3 million

dollar budget that caught my attention.  I decided to track this closely to compare their procedures and activities as a SID to my own with CBID.  Both their 3 Million dollar  budget (heavily weighted in event planning dollar allocations) and assessment roll were approved and their fiscal Year was defined as July 1 through June 30.

14.     After learning of Michael J. DeMarco's political campaign contribution of $250,000 to support Fulop's (technically undeclared) run for Governor Pac via social media in early 2018, I then took note of the Alliance's prominent position in the local media and huge voice in this Katyn Monument controversy about who was to foot the bill for all of this conceptual fantasy.

15.     To be clear, Jersey City Municipal Ordinance 18-057 is void and should be nullified.  The manner in which Ordinance 18-057 was presented, amended and finally adopted violates state law and infringes my right to both substantive and procedural due process under the law.  I am preparing a separate law suit seeking to nullify the ordinance on the grounds that Mayor Fulop and the Municipal Council failed to follow the procedure prescribed by N.J.S.A. 40:49-2 as well as damages for the concomitant due process violations.

16.     Nonetheless, upon reviewing their poorly executed, inconsistent rendering presentations on local FaceBook Group Forums, I soon connected the dots to have a V-8 moment and decided to see if the Exchange Place Alliance had anything in their 2018-2019 budget items (an annual budget is required by their Enabling Ordinance to be submitted to the Mayor and Council of the City of Jersey City City no later than April 01, 2018) that would prove to confirm or deny rumors of how the Alliance's proposed vision concept would translate into reality, both financially and physically.

17.     On June 26, 2018 at the start of business, I inquired after this information via

telephone conversation with Irene McNulty, Deputy City Clerk and followed up in the afternoon with Emanuel of the City Clerk's Office to receive what I reproduced in the attached email thread. See Exhibit **"A"**. I specifically requested the proposed budget that should have been submitted by April 1, 2018.

18.     On June 27, I was advised by way of email response that the Alliance had nothing filed in their office for the current cycle. See Exhibit **"A"**.

19.     On July 31, 2018, I inquired of the Jersey City City Clerk whether the Alliance had filed its By-laws and its Annual Report. See Exhibit **"B"**. To date, there has been no annual report filed by Alliance.

20.     Attached hereto as Exhibit **"C"** is a copy of the Alliance's By-laws provided by the City Clerk.

21.     My experience informed me that since the Alliance had not met the requirements of their enabling Ordinance in timely filings, that they cannot have the Jersey City Tax Collector's Office include their assessment roll in the upcoming citywide August 2018 Tax billing, which renders them unable to receive their Operating Funds without special costly city services and a delay of at least 3 months from the time that they do finally file.

22.     The extra added irony of this obvious conundrum they have is that the political powerhouse law firm of Scarinci Hollenbeck that is representing Mr. DeMarco's Alliance interests before this court is the very same law firm that instituted his Alliance SID in it's creation and the initial 1st year term, so they have no scapegoat to blame for them currently being in default or without funds  - just themselves and their apparent shared belief with Mayor Fulop that they too are above the New Jersey laws that govern this process.

23.     In closing, I wish thank the court for its consideration and respectfully request this

Court enter an Order denying the Proposed Intervenor Exchange Place Alliance's Motion to Intervene and to Dismiss the Verified Complaint and dismissing the Alliance from this action.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Date: July 31, 2018                                   /s/ Maria Scariati
                                                      Maria Scariati

# EXHIBIT A



**Markis M. Abraham <mabraham@abelawfirm.com>**

---

## Fwd: RE: EXCHANGE PLACE ALLIANCE SID BUDGET REQUEST

**maria** <m.scariati@lightsolutions.com>                     Sat, Jul 28, 2018 at 1:02 PM
To: "Markis M. Abraham" <mabraham@abelawfirm.com>

The VIP Evidence of the Alliance's lack standing to facilitate Derek's short response for M&F's Monday July 30 return
deadline re: Alliance Intervention >>>>>

-------- Forwarded Message --------
**Subject:** RE: EXCHANGE PLACE ALLIANCE SID BUDGET REQUEST
   **Date:** Wed, 27 Jun 2018 14:33:08 +0000
  **From:** Irene McNulty <McNultyI@jcnj.org>
     **To:** maria <m.scariati@lightsolutions.com>
    **CC:** Robert Byrne <RByrne@jcnj.org>, Sean Gallagher <SeanG@jcnj.org>

```
Ms. Scariati:

The documents I forwarded you this morning are the most recent budget documents for the above SID on file
in our office.  They have not yet filed documents for the next cycle.

Irene McNulty, R.M.C.
Deputy City Clerk
Office of the City Clerk
280 Grove Street
Jersey City, NJ 07302
Telephone #201-547-4847
FAX #201-547-5461


-----Original Message-----
From: maria [mailto:m.scariati@lightsolutions.com]
Sent: Wednesday, June 27, 2018 10:13 AM
To: Irene McNulty
Subject: Re: EXCHANGE PLACE ALLIANCE SID BUDGET REQUEST
Importance: High

Hi Irene,

Thank You for sending these docs. from last years SID Budget Term [that
expires in the next couple of days actually].

I am seeking the the current one that should be on file with your office
by now and up for CC approval for uninterrupted continuation of this
Special Improvement District.

Please let me know the status of this matter if you are unable to
forward the current one soonest.

Thank you & best regards,

M


On 6/27/2018 8:29 AM, Irene McNulty wrote:
> Ms. Scariati:
>
> Attached please find the Exchange Place Alliance SID Budget as per your request.
>
> Irene McNulty, R.M.C.
```

> Irene McNulty, RMC/
> Deputy City Clerk
> Office of the City Clerk
> 280 Grove Street
> Jersey City, NJ 07302
> Telephone #201-547-4847
> FAX #201-547-5461
>
> -----Original Message-----
> From: maria [mailto:m.scariati@lightsolutions.com]
> Sent: Wednesday, June 27, 2018 8:27 AM
> To: Irene McNulty
> Subject: EXCHANGE PLACE ALLIANCE SID BUDGET REQUEST
> Importance: High
>
> GM Irene,
>
> I still have not received these budget documents that Emanuel said you
> were sending yesterday.
>
> Can you please forward them soonest to my return email, as i need them
> to continue my work here.
>
> TY,
>
> m
>

# EXHIBIT B



Markis M. Abraham <mabraham@abelawfirm.com>

---

## Request For Documents ::: EXCHANGE PLACE ALLIANCE's BY-LAWS & ANNUAL REPORT

---

**maria** <m.scariati@lightsolutions.com>                                    Tue, Jul 31, 2018 at 5:20 AM
To: Irene McNulty <McNultyI@jcnj.org>

Good Morning Irene,

I have URGENT need for the afore-listed documents that should be on file in your [City Clerk] offices by now.

1]  EXCHANGE PLACE ALLIANCE's  BY-LAWS        2]  EXCHANGE PLACE ALLIANCE's  ANNUAL REPORT


Thanking You In Advance 4 ur propmpt attention to this matter, as i am on a short deadline        ....All the Best,  maria



Markis M. Abraham <mabraham@abelawfirm.com>

---

## Request For Documents ::: EXCHANGE PLACE ALLIANCE's BY-LAWS & ANNUAL REPORT

---

**maria** <m.scariati@lightsolutions.com>                                    Tue, Jul 31, 2018 at 11:51 AM
To: "Markis M. Abraham" <mabraham@abelawfirm.com>

fyi

she is working on seeing with others  for the annual report now....but doesn't recall seeing an annual report yet....she is double checking

-------- Forwarded Message --------
**Subject:**RE: Request For Documents ::: EXCHANGE PLACE ALLIANCE's BY-LAWS & ANNUAL REPORT
  **Date:**Tue, 31 Jul 2018 15:47:00 +0000
 **From:**Irene McNulty <McNultyI@jcnj.org>
    **To:**maria <m.scariati@lightsolutions.com>
   **CC:**Robert Byrne <RByrne@jcnj.org>, Sean Gallagher <SeanG@jcnj.org>

Ms. Scariati:

Attached please find copy of the Exchange Place Alliance By-Laws as per your request.  I will get back to you as soon as possible regarding the requested Annual Report.

**Irene McNulty, R.M.C.**

**Deputy City Clerk**

Office of the City Clerk

280 Grove Street

Jersey City, NJ 07302

Telephone #201-547-4847

FAX #201-547-5461

---

**From:** maria [mailto:m.scariati@lightsolutions.com]
**Sent:** Tuesday, July 31, 2018 11:40 AM
**To:** Irene McNulty
**Subject:** Fwd: Request For Documents ::: EXCHANGE PLACE ALLIANCE's BY-LAWS & ANNUAL REPORT

-------- Forwarded Message --------

**Subject:** Request For Documents ::: EXCHANGE PLACE ALLIANCE's BY-LAWS & ANNUAL REPORT

**Date:** Tue, 31 Jul 2018 05:20:31 -0400

**From:** maria <m.scariati@lightsolutions.com>

**To:** Irene McNulty <McNultyI@jcnj.org>

[Quoted text hidden]

---

📄 **Exchange Place Alliance Executed Bylaws.pdf**
474K

# EXHIBIT C

# BYLAWS OF THE EXCHANGE PLACE ALLIANCE
# BUSINESS IMPROVEMENT DISTRICT MANAGEMENT CORPORATION, INC.

Adopted as of   February 28, 2017

## ARTICLE I
## NAME; OFFICES; CORPORATE SEAL

1.01 Name. The name of the corporation is the Exchange Place Alliance Business Improvement District Management Corporation, Inc. (the "Corporation") and shall also be know as the Exchange Place Alliance, and such other assumed names as the Board of Directors shall determine from time to time.

1.02 Offices. The principal office of the Corporation shall be located at such location or locations in Jersey City, New Jersey, as the Board of Directors ("Directors" is used herein to refer to "Trustees" as such term is defined under the New Jersey Nonprofit Corporation Act) may hereafter designate from time to time.

1.03 Corporate Seal. The Board shall procure a corporate seal which shall be circular in form and shall bear, on its outer edge, the name "Exchange Place Alliance Business Improvement District Management Corporation;" and, in the center, the words and figures "Incorporated 2016, New Jersey." The Board may amend the form of the seal or the inscription thereon at its discretion.

## ARTICLE II
## PURPOSES

2.01 Purposes. The Corporation is organized and shall be operated exclusively for charitable and educational purposes, within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), and the Regulations thereunder as they may hereafter be amended. The purposes and powers of the Corporation are more particularly set forth as follows:

(a) To serve as the district management corporation for the Exchange Place Special Improvement District provision pursuant to N.J.S.A. 40:56-65 et seq. (the "Act") and as approved in the City of Jersey City – Exchange Place Special Improvement District Ordinance. As such, the Corporation shall have the powers and comply with all requirements as set forth in the Act and in the Exchange Place Special Improvement District Ordinance.

(b) Serve the special improvement district, the business community and the town government to formulate, promote and implement the economic revitalization and general welfare of the special improvement district and the City of Jersey City;

(c) Promote and preserve the cultural, historic, tourist and civic interests of the special improvement district and the City of Jersey City;

(d) Mobilize available public and private resources for the purposes set forth herein;

(e) Provide a mechanism by which service firms, retail establishments, property owners, employers, citizens, and others can cooperate to promote business opportunities, employment, consumer choices, shopper's facilities, and the general civil interest;

(f) Form affiliated corporations, non-profit or for profit, to help carry out its purposes;

(g) To do any other act incidental to or connected with the foregoing purposes or any advancement thereof, either directly or indirectly, either alone or in conjunction or cooperation with others; to do any and all lawful acts and things and to engage in any and all lawful activities which may be necessary, useful, suitable, desirable or proper for the furtherance, accomplishment, fostering, or attainment of any or all of the purposes for which the Corporation is organized; and to aid or assist other organizations whose activities are such as to further accomplish, foster, or attain any of such purposes.

(h) Notwithstanding any other provision of these By-laws, the Corporation shall not conduct any activities not permitted to be carried on by (i) a corporation exempt from Federal income tax under section 501(c)(3) of the Code (or the corresponding provision of any future United States Internal Revenue Law) or (ii) a corporation permitted to deduct its contributions under Section 170(c)(2) of the Code (or the corresponding provision of any future United States Internal Revenue Law).

(i) The Corporation shall not carry on propaganda or otherwise attempt to influence legislation. The Corporation shall not engage in any transaction or permit any act or omission that shall operate to deprive it of its tax-exempt status under Section 501(c)(3) of the Code. The Corporation shall not in any manner, including, but not limited to the publishing or distribution of statements, or to any extent participate in or intervene in any political campaign on behalf of any candidate for public office nor shall it engage in any "prohibitive transaction" as defined in Section 503(b) of the Code.

(j) The Corporation shall not have capital stock, and no stock or shares shall be issued. No incorporator, Director or officer shall at any time be considered to be an owner of any of the assets, property, or income of the Corporation, nor shall he or she, by distribution, liquidation, dissolution, or in any manner, be entitled to or receive any said assets, property or income, all of which shall be devoted exclusively and forever to the purposes of the Corporation or disposed of herein provided. The Corporation is organized and shall operate not for profit, and no part of its net earnings shall inure or may lawfully inure to the benefit of any private shareholder, incorporator, director, officer or individual. The above provisions, however, shall not prevent the payment of reasonable compensation to any person, organization, firm, or corporation for services rendered to the Corporation.

(k) The Corporation also has such powers as are or may hereafter be granted under laws of New Jersey that are in furtherance of the Corporation's exempt purposes within the meaning of Section 501(c)(3) of the Code or the corresponding section of any future Federal tax code.

## ARTICLE III
## MEMBERS

3.01 Membership. The members of the Corporation (the "Members") shall be as follows:

(a) each owner of real estate that is subject to assessment by the Special Improvement District (the "Assessed Property") shall have one (1) membership in the corporation for each One Hundred Thousand Dollars ($100,000.00) of assessed value as established on January 1 of any given year notwithstanding that such assessment may vary throughout the year as a result of reevaluations or tax appeals; and

(c) If two (2) or more people own a controlling interest in one (1) or more properties, said controlling group shall designate one (1) person as the Member to represent all of such properties and/or businesses collectively.

3.02 Rights of Members. The rights of each Member shall be limited to voting for the Directors of the Corporation as set forth in Article IV hereof.

3.03 No Transfers of Membership Interests. No Member, directly or indirectly, shall assign, transfer, hypothecate, pledge, encumber, give or otherwise voluntarily or involuntarily dispose of any or all of his or her Membership Interest in the Corporation.

## ARTICLE IV
## BOARD OF DIRECTORS

4.01 Board of Directors. There shall be seven (7) members of the Board of Directors of the Corporation. Each Director must be at least eighteen (18) years of age. The policies, activities, and affairs of the Corporation shall be determined and managed by the Board of Directors who shall exercise all the powers of the Corporation and shall keep full and fair accounts of all its transactions, and formulate and approve the yearly budget of the Corporation. For designation purposes the Board of Directors is referred to, in these By- laws, as the "Board", and each person serving on the Board is referred to individually as "Director," and, if more than one (1) director is referred to, as "Directors" (as set forth in Article 1.02, "Directors" is used herein to refer to "Trustees" as such term is defined under the New Jersey Nonprofit Corporation Act).

4.02 Term of Office. The term of each Director shall expire at the second (2nd) Annual Meeting of the Corporation after their election/selection to the Board except with respect to the Initial Directors.

4.03 Composition of the Initial Board of Directors. The "Initial Directors" shall be comprised of the following:

(a)     There shall be six (6) Directors appointed by the Special Improvement District Steering Committee established by Executive Order of the Mayor of Jersey City, one Selected Director and one (1) Appointed Director.

1) From the improvement area: There shall be five (5) property owners ("Initial Directors") and one (1) resident within the geographical area of the Special Improvement District ("Initial Selected Director"). The Initial Selected Director shall serve for a term of one year. Two (2) of the Initial Elected Directors, as determined by the Board, shall serve for a term of three (3) years. The Initial Selected Director shall be appointed by the Initial Elected Directors.

2) There shall be one (1) Director appointed by the City of Jersey City (the "Initial Appointed Director"). The Initial Appointed Director shall serve for a term of one (1) year.

The Board shall generally be comprised of the following:

(b) There shall be two (2) Directors elected at the first annual meeting of the Members, one Selected Director and one (1) Appointed Director.

1) From the improvement area: There shall be two (2) property owners ("Elected Directors") and one (1) resident within the geographical area of the Special Improvement District ("Selected Director"). The Selected Director shall be appointed by the Elected Directors.

2) There shall be one (1) Director appointed by the City of Jersey City ("Appointed Director").

4.04 Election of Directors

(a) Except as set forth in Article 4.03(a) hereof with respect to the Initial Directors, Initial Selected Director and Initial Appointed Director and Article 4.03(b) with respect to Selected and Appointed Directors, Elected Directors shall be elected by plurality vote of Members.

(b) Except with respect to the Initial Directors, Initial Selected Director and Initial Appointed Director, the election/appointment of Elected Directors shall be held annually in the month of September or October ("Election Meeting"). The date, time and place of the Election Meeting shall be determined by the Board at the Annual Meeting of the Directors. Except as set forth in Article 4.03(a) hereof with respect to the Initial Directors and Article 4.03(b) with respect to Selected and Appointed Directors, Elected Directors shall be nominated by the sitting Board of Directors and by requesting nominations from the membership by regular mail by August 1st of each year, then approved by majority vote by a quorum of the sitting Board of Directors, and then elected by plurality vote of the Members.

(c) The Members shall nominate as follows:

(i) Each Member, or his, her or its designee, who is the owner of Assessed Property shall be entitled to one (1) Special Improvement District nomination for each One Hundred Thousand Dollars ($100,000.00) of assessed value as established on January 1 of any given year notwithstanding that such assessment may vary throughout the year as a result of reevaluations or tax appeals. If two (2) or more people own a controlling interest in one or more properties, that controlling group shall designate one (1) person as the Member to represent them and to cast a nomination.

4.05 Removal of Directors.

(a) At any meeting of the Directors, duly called and at which a quorum is present, the voting Directors may, by a majority vote, remove for cause any Director from office and may elect a successor to serve for the balance of the term of such removed Director;

(b) A Director shall be deemed to have been automatically removed from office for cause without further action being necessary on the part of such Director or on the part of the Board, in the event that such Director or a designee fails to attend three (3) consecutive regular meetings of the full Board. Following the removal of a Director in the manner provided in this Article 4.05(b), the Secretary of the Corporation shall report such fact to the Board at the meeting of the Board next following the third absence.

(c) Vacancies occurring in the Board for any reason may be filled by a vote of majority of the Directors then in office. A Director elected to fill a vacancy shall be elected to hold office for the unexpired term of his or her predecessor.

(d) Notwithstanding the provisions of Articles 4.05(b) and (c) hereof, upon the removal of a Director pursuant to either such provision, the removed Director may petition the Board in writing for reinstatement as a Director of the Corporation. Any such petition for reinstatement must (i) set forth in detail an explanation for each absence which explanation must demonstrate just cause for the reinstatement and (ii) must be received by the Secretary of the Corporation not later than ten (10) days prior to a regularly scheduled Board meeting in order for such petition to be considered at such meeting. Upon the receipt of any such petition for reinstatement by the Corporation, the Board at its next regularly scheduled meeting following receipt of any such petition in accordance with this Article 4.05(e) shall consider each such petition and only upon the affirmative vote of a majority of the Directors present shall such removed Director be reinstated. A reinstated Director shall be deemed to have no absences upon such reinstatement. (f) This Article 4.05 shall not apply to the Selected Directors.

(e) Notwithstanding existing elected officials and the Appointed Director, a Director will be removed from the Board of Directors immediately if they declare formally or informally an intention to run for public office other than the school boards level in the County of Hudson.

ARTICLE V

MEETINGS OF THE DIRECTORS

5.01 Annual Meeting.   The annual meeting of the Directors shall be held in December of each year (the "Annual Meeting") for the election of officers and to conduct such other business as may come before the Board. The Secretary shall cause to be mailed to each Director at his or her address a notice stating the time and place of the Annual Meeting. All voting shall take place at said meeting. Officers shall be elected by a majority of the full membership of the Board, excluding vacancies. Officers elected at the Annual Meeting shall take office effective immediately upon election.

5.02 Regular Meetings.   Regular meetings of the Board of Directors shall be held at least four (4) time per year, which shall include the Annual Meeting. The other three (3) dates shall be established by the Board of Directors at its Annual Meeting. Meetings shall be held at locations and at times chosen by the Directors at the Annual Meeting, and no additional notice of place, day and hour of regularly scheduled meetings need be given to any Director

5.03 Initial Meeting.

(a)      At the initial meeting of the Corporation, the officers shall be elected by the initial Board to serve until the first Annual Meeting.  Thereafter, the officers of the Corporation shall be elected by the Board at the Annual Meeting in accordance with the provisions of Article IV.

5.04 Special Meetings.  Special meetings of the Board may be called by the President.  Notice of the place, day and hour of such special meeting shall be given to each Director at least twenty-four (24) hours before the meeting, by delivering notice to him personally, or by delivering the same at his or her residence or usual place of business, or by contacting him or her by telephone. Any notice of a special meeting shall state the business to be transacted.

5.05 Quorum & Electronic Voting.  A quorum at the meetings of the full Board shall consist of a majority of those Directors present at such meetings; however, at a minimum five (5) voting members of the Board, excluding vacancies, must be present in order to vote on any measure.  A quorum of three (3) people of which one must be an officer must be present for the Executive Committee Meetings. Except as otherwise provided in the Certificate of Incorporation, these By-Laws or the laws of the State of New Jersey, a quorum shall be sufficient to pass any measure. In the absence of a quorum, the Directors present by a majority vote and without notice other than by announcement may adjourn the meeting, from time to time, until a quorum shall attend. At any such meeting after an adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the adjourned meeting as originally notified. Committees and subcommittees do not have a quorum requirement, but must consists of two members, one of which may be staff of the organization. Meetings may take place electronically by telephone, and/or through the Internet and will be recorded by electronic vote and added to the minutes.

5.06 Compensation. No compensation shall be paid to any officer or Director. Nothing herein shall prevent any officer or Director from being reimbursed for out-of-pocket expenses or compensated for services rendered in any other capacity to or for the Corporation, provided, however, that any such expenses incurred or services rendered shall have been authorized in advance by resolution of the Board.

5.07 Contracts and Service. The members, Directors and officers of the Corporation may be interested directly or indirectly in any contract relating to or incidental to the operations conducted by the Corporation, and may freely make contracts, enter transactions, or otherwise act for and on behalf of the Corporation, notwithstanding that they also may be acting as individuals, or a trustee of trusts, or as agents for other persons or corporations, or may be interested in the same matters as stockholders, members, trustees, or otherwise. Notwithstanding the foregoing, any contract, transaction, or act on behalf of the Corporation in a matter in which any member, Director or officer is personally interested as a stockholder, director, or otherwise must be disclosed to the Directors, conducted at arm's length, shall not violate any prohibition against the Corporation's use or application of its funds for private benefit and shall be approved in accordance with N.J.S.A. 15A:6-8 as same may be amended or modified and any successor statute thereto. Common or interested Directors may be counted in determining the presence of a quorum at a board meeting at which such a contract or transaction is authorized, approved or ratified; however, such authorization, approval or ratification shall only be effective by affirmative vote of a majority of the disinterested Directors present and voting.

ARTICLE VI<br>COMMITTEES OF THE BOARD OF DIRECTORS

6.01 Committees Generally. By resolution adopted by a majority of the Board, the Board may provide for such standing or special committees with such powers and duties as it deems desirable and may discontinue the same at its pleasure. The members of all such committees shall be appointed and the committee chairman named by the President. At least one member of each standing or special committee shall be a member of the Board; the remaining members of such committees may, but need not be, members of the Board. Each committee shall keep full and fair accounts of its transactions and accurate minutes of its meetings. Vacancies on any committee shall be filled by the President. Selected members representing municipal elected officials on the Board may not serve as voting members of Committees or Subcommittees.

6.02 Committee Reports. All recommendations by a committee shall be reported in writing (includes electronically) to the Board.

6.03 Meetings of Committees. Each committee shall meet at the call of the chairman of the committee or any two (2) members of the committee.

6.04 Participation in Committees. In selecting members of committees, the Board shall encourage widespread participation among members of the business community within the special improvement district and others concerned with the purposes of the Corporation. From time to time, special

committees may be named to advise the Board on issues on which additional perspective may be required and public meetings may be held to solicit advice from those concerned about the economic well-being of the district.

ARTICLE VII

OFFICERS

7.01 Executive Officers. By a quorum of the Board, excluding vacancies, at the Annual Meeting, the Board shall elect a President, a Vice President, a Treasurer, and a Secretary from among the Elected Directors to serve for a one (1) year term.

7.02 Vacancies. Except as provided in Article 7.03 herein below, in the event any office becomes vacant by death resignation, retirement, removal, disqualification or any other cause, the Board may elect, by a majority vote of the full membership of the Board, excluding vacancies, an officer to fill such vacancy, and such officer shall hold office and serve until the next Annual Meeting. In the event that any officer cannot conduct the duties of his or her office for a period exceeding sixty (60) days, the Board may deem such office vacant.

7.03 President and Vice Presidents of the Board of Directors.

(a) President.

(i)  The President shall preside at all meetings of the Corporation and of its Board.

(ii) The President shall have general charge and supervision of the activities and affairs of the Corporation.

(iii) The President may call special meetings of the Board.

(iv) The President shall have and may exercise such powers as are, from time  to time, assigned to him or her by the Board.

(v) With the approval of the Board and in conjunction with the Secretary, the President may enter into and execute in the name of the Corporation, contracts and other instruments in the regular course of business, except where the execution of such instruments is expressly delegated by resolution of the Board to another officer or agent of the Corporation.

(b) Vice President.

(i)  In the event the President is absent or unable to act, or at the request of the President, the First Vice President shall perform the duties and exercise the functions of the President, and when so acting shall have the powers of the President.

(ii)  The Vice President shall have such other duties as may be assigned to him or her by the President.

7.04 Secretary.

(a) The Secretary shall keep or cause to be kept corporate records in which shall be  entered all information required by these By-laws or by law to be kept by the Corporation,   which shall include, but is not limited to, the minutes of the meetings of the Board in books  provided for such purpose.

(b) The Secretary shall perform any and all legal duties under the Certificate of Incorporation and incident to the corporate office of Secretary.

(c) The Secretary shall be responsible for providing notice of meetings and other actions to Directors whenever required by these By-laws or by law.

(d) The Secretary shall be the custodian of the Corporation's seal and shall affix same to all documents which require said seal and which he or she has been authorized to execute on behalf of the Corporation and when so affixing may attest to the same.

(e) The Secretary shall perform all other duties as, from time to time, may be assigned to the Secretary by the Board or the President.

(f) A assistant secretary may be appointed to act solely as corporate notary. This person may be a elected Board member of a member of the staff.

7.05 Treasurer.

(a)   The Treasurer shall be the custodian of all funds, securities and receipts of the Corporation, and shall cause to be deposited in the name of the Corporation all monies and other valuable effects in such depositories as may be designated by the Board.

(b)   The Treasurer shall disburse the funds of the Corporation as authorized by the Board.  The Treasurer shall keep or cause to be kept proper vouchers of all sums disbursed, and maintain complete and regular accounts in accordance with a system satisfactory to the Board.

(c)  Upon the request of the Board, and at least annually, the Treasurer shall submit to the Board an account of the financial condition of the Corporation.

(d) The Treasurer shall perform any and all legal duties under the Certificate of Incorporation and incident to the office of a treasurer of a Corporation and such other duties as may be assigned to him or to her by the Board or the President.

7.07 Personnel. The Board may hire and/or retain an administrator, manager, staff and/or consultants as necessary to achieve the purposes of the Corporation.

7.08 Removal. Any officer of the Corporation may be removed from office with or without cause by the affirmative vote of a majority of the Board.

ARTICLE VIII

CONDUCT OF BUSINESS

8.01 Checks, Drafts, Etc. Except as otherwise provided in these By-Laws, all checks, drafts or other orders for payment of money, and all notes, bonds or other evidences of indebtedness issued in the name of the Corporation shall be signed by such officers and/or Directors in such manner as shall, from time to time, be determined by resolution of the Board. In no event shall the signatures of fewer than two (2) such officers and/or Directors be necessary to bind the Corporation on any such checks, drafts or other order for payment of money, note or other evidence of indebtedness.

8.02 Annual Reports. There shall be prepared annually a full and correct statement of the affairs of the Corporation, including a balance sheet and statement of operations for the preceding fiscal year, audited and certified by an independent Certified Public Accountant, which shall be submitted to and reviewed by the Board at a regular meeting of the Directors and filed immediately thereafter at the principal office of the Corporation. Such statement shall be prepared by the Treasurer, or such other executive officer of the Corporation as may be designated by the Board, in conjunction with the independent Certified Public Accountant. A copy of the report shall be made available at the principal office of the Corporation for inspection by the public upon request made to Corporation.

Within ninety (90) days after the close of each fiscal year, there shall be filed with the Mayor and Clerk of the City of Jersey City an annual written report for the preceding fiscal year.

8.03 Fiscal Year. The fiscal year of the Corporation shall be the calendar year, January 1st with the year ending December 31st, unless otherwise provided by the Board by resolution.

8.04 Bonds. The Board may require any officer, agent or employee of the Corporation to give a bond to the Corporation conditioned upon the faithful discharge of his or her duties with one or more sureties and in such amount as may be satisfactory to the Board.

8.05 Contracts. Except as otherwise provided in these By-Laws, the Board, by resolution, may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name and on behalf of the Corporation, and such authority may be general or confined to specific instances.

8.06 Deposits. All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board

by resolution may select or as may be designated by any officer or officers, agent or agents of the Corporation to whom such power is delegated by resolution of the Board.

8.07 Acceptance of Gifts. The Board or any officer or officers, agent or agents of the Corporation to whom such authority is delegated by resolution of the Board may accept on behalf of the Corporation any contribution, gift, grant, bequest or devise for the general purposes or for any special purpose of the Corporation followed by proper acknowledgment.

## ARTICLE XIV
## AMENDMENTS

9.01 Amendments. A motion to amend, alter, repeal, or enact a new By-law may be introduced, considered, discussed and voted on at any meeting of the Board, provided at least ten (10) days prior to such meeting a full written statement of the exact language of the motion and the time, place and date of the meeting when the motion(s) will be introduced has been forwarded to every member of the Board by regular mail. An affirmative vote of a quorum of the Board shall be required to carry said motion. The procedures and notice of requirements of this section shall apply irrespective of any contrary provisions which may be contained in these By-Laws.

## ARTICLE X
## INDEMNIFICATION; EXCULPATION

10.01 Indemnification.

(a) For the purposes of this Article X, all definitions set forth in N.J.S.A. 15A:3-4, as amended from time to time, shall apply.

(b) Indemnification of any person who is a director, officer, employee or corporate agent of the Corporation shall be provided to the fullest extent permitted by N.J.S.A. 15A:3-4 as same may be amended or modified and any successor statute thereto or any other applicable provision of law. Such indemnification shall include, without limitation, indemnification against the actual amount of net loss including counsel fees, reasonably incurred by or imposed upon him or her in connection with such action, except as to matters for which he or she shall be ultimately found in such action to be liable for gross negligence or willful misconduct. In the event of any settlement of such a case, indemnification shall be provided only in connection with such matters covered by the settlement as to which the Corporation is advised by counsel that the person to be indemnified had not been guilty of gross negligence or willful misconduct.

(c) Any corporate agent may be insured by insurance purchased and maintained by the Corporation against any expenses incurred in any such proceeding and any liabilities asserted against the corporate agent in the capacity as corporate agent, whether or not the Corporation would have the power to indemnify such corporate agent under N.J.S.A. 15A:3- 4 as same may be amended or modified and any successor statute thereto.

4843-9716-5370, v. 1

10.02 Exculpation. Unless acting in bad faith, neither the Board as a body nor any Director, officer or corporate agent shall be personally liable to any Member of the Corporation in any respect for any action or lack of action arising out of the execution of his or her office. Each Member of the Corporation shall be bound by the good faith actions of the Board, officers and corporate agents of the Corporation, in the execution of the duties and powers of said Directors, officers and corporate agents. However, nothing contained herein shall be construed so as to exculpate Directors, or any of them, from discharging their fiduciary responsibilities.

10.03 Interpretation. This Article X is subject to N.J.S.A. 15A:3-4 as same may be amended or modified and any successor statute thereto. Nothing in this Article X shall be construed so as to conflict with or violate the terms of N.J.S.A. 15A:3-4. Any and all requests for indemnification under this Article X shall be made, and shall be heard and decided by the Board, in accordance with the applicable terms of N.J.S.A. 15A:3-4.

ARTICLE XI

DISSOLUTION

11.01 Dissolution. Upon the dissolution of the Corporation, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Code (or the corresponding section of any future Federal tax code) or shall be distributed to the Federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

**CERTIFICATE**

I, the undersigned Secretary of the EXCHANGE PLACE ALLIANCE BUSINESS IMPROVEMENT DISTRICT MANAGEMENT CORPORATION, hereby certify that the above is a true copy of the By-Laws of said Corporation duly adopted and in full force and effect.

Name:   Andrew Marshall

Dated: 2|28 , 2016
2017